### ISBRANDTSEN–MOLLER CO., Inc., v. UNITED STATES et al.

District Court, S. D. New York.
April 8, 1936.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for complainant.

Lamar Hardy, U. S. Atty., of New York City (John F. Davidson, Asst. U. S. Atty., of New York City, Ralph H. Hallett, Asst. Counsel, Department of Commerce of Washington, D. C., and Richard J. Burke, Sp. Asst. to U. S. Atty., of New York City, of counsel), for defendants.

Before CHASE, Circuit Judge, and BONDY and PATTERSON, District Judges.

CHASE, Circuit Judge (after stating the facts as above).

The service upon the defendants who have appeared specially was not made within the Southern District of New York, but instead within the District of Columbia. That is the real ground of the motion to

quash. But it is clear that this court has jurisdiction over the subject-matter of the cause of action and that as the complainant resides within the Southern District of New York the venue is in accordance with the provisions of 28 U.S.C.A. § 43. And section 44 of the same title provides that in cases of the class in which this one falls "the orders, writs, and processes of the district courts may in these cases run, be served, and be returnable anywhere in the United States." These sections related to suits in regard to orders of the Interstate Commerce Commission, and by section 31 of the Shipping Act of 1916 (46 U.S.C.A. § 830) were made to apply to similar suits relating to orders of the Shipping Board. Hence the service upon those defendants in the District of Columbia was good and the issue on their motion is narrowed to whether or not they are proper parties. This in turn depends upon whether they have any interest in the cause of action.

 The Executive Department Reorganization Act of June 30, 1932, amended March 3, 1933 (5 U.S.C.A. § 124 et seq.), provided that the President should investigate and determine what changes were necessary in the executive and administrative agencies of the government to accomplish stated ends, among them to reduce expenses and increase efficiency; and gave him the power to—

"(a) Transfer the whole or any part of any executive agency and/or the functions thereof to the jurisdiction and control of any other executive agency;

"(b) Consolidate the functions vested in any executive agency; or

"(c) Abolish the whole or any part of any executive agency and/or the functions thereof; and

"(d) Designate and fix the name and functions of any consolidated activity or executive agency and the title, powers, and duties of its executive head; except that the President shall not have authority under this title to abolish or transfer an executive department and/or all the functions thereof." 5 U.S.C.A. § 126.

And it was further provided in section 130, 5 U.S.C.A., that: "Whenever the President makes an Executive order under the provisions of this chapter, such Executive order shall be submitted to the Congress while in session and shall not become effective until after the expiration of sixty calendar days after such transmission, unless Congress shall by law provide for an earlier effective date of such Executive order or orders." "Executive agency" was defined to be "any commission, independent establishment, board, bureau, division, service, or office in the executive branch of the Government." 5 U.S.C.A. § 125. Executive Order No. 6166 in section 12 (5 U.S.C.A. § 132 note) provided that: "The functions of the United States Shipping Board including those over and in respect to the United States Shipping Board Merchant Fleet Corporation are transferred to the Department of Commerce, and the United States Shipping Board is abolished." The order was transmitted to Congress as required and became effective August 10, 1933. Thus the Department of Commerce was made to take over the functions of the Shipping Board. But it is a part of the executive establishment of the United States and a suit against it is in reality a suit against the United States. The United States was made a party to this suit and is a necessary party. 28 U.S.C.A. § 46; Illinois Central Railroad Co. v. Public Utilities Commission, 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425. As the United States has consented to be sued and is a party and neither one of its departments nor any subdivision of such department can have any interest in the action different from that of the United States itself, they appear to have no interest which will support the contention that they are proper parties and the motion to dismiss as to them is granted. Nor has defendant Peacock either individually or otherwise any interest in the suit. He did not issue the order which is under attack. So the motion in his behalf will be granted.

 Further decision must turn on the sufficiency of the bill on the merits. It is clear that it should be dismissed as to defendant Hardy, who is not alleged to have had any connection with the subject-matter of the suit; it being alleged merely that he is the United States attorney for the Southern District of New York. As to the remaining defendants the issue has two aspects: (1) Whether the Executive Department Reorganization Act, as amended (5 U.S.C.A. § 124 et seq.), authorized the President to abolish the Shipping Board and transfer its functions to the Department of Commerce; and (2) whether, if so, Congress had the power so to do.

As to (1), it may be said that it is doubtful whether the Shipping Board was fairly within the definition of the term "executive agency" found in section 125, 5 U.S.C.

A., section 402 of the act. It would appear more nearly correct to have considered it a board of specially selected members with neither political nor executive functions whose duties were quasi-judicial and quasi-legislative like those of the Federal Trade Commission. See Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611. But doubt as to whether the Executive Department Reorganization Act was intended by Congress to confer upon the President the authority he exercised in respect to the Shipping Board must be resolved against the complainant in view of the fact that after the order had been promulgated Congress adopted the construction thus given the act by permitting the order to become effective after notice to it and the expiration of the prescribed time and also by passing on April 7, 1934, the Department of Commerce Appropriation Act (48 Stat. 546–566), providing funds to pay the salaries and expenses of that department, inter alia, "To carry out the provisions of the Shipping Act, 1916, as amended, and the Merchant Marine Acts of 1920 and 1928, as amended (U.S.C., title 46, secs. 804, 805, 861–889; * * * Executive Order numbered 6166, June 10, 1933)." Again on March 22, 1935 it provided funds for the same department for another fiscal year using similar language. We think all this amply shows that Congress intended to confer upon the President authority to abolish the Shipping Board and transfer its functions to the Department of Commerce.

[8] There remains only the question of the power of Congress to do that. On this point we are concerned with power regardless of the wisdom or effect of its exercise as a matter of good public policy. Much of the complainant's argument has been directed to the public benefit which would flow from keeping the functions formerly of the Shipping Board independent and free from the direct control an executive can exert over the Department of Commerce. Perhaps that is so, but that is for Congress to decide in the performance of its duty to legislate in the public interest, and so long as it acts within the scope of its power as the National Legislature its choice of means and methods is to be given effect.

It is not, nor could it successfully be, disputed that Congress had the power to delegate to the Shipping Board in the manner it did so, the powers and duties that board possessed before Executive Order No. 6166 was promulgated. The change which has been made clothes an executive department with the same powers and duties to be exercised in the same way as before. We think that the same powers and duties which were properly delegated to the Shipping Board could be so delegated to any other person or body to which Congress should see fit to cause them to be transferred. It elected to have the President investigate and decide what should be done in this regard in the furtherance of efficiency and economy and then adopted his decision. The result was to abolish a board whose existence was dependent upon the will of Congress and to delegate to the Department of Commerce the same powers and duties the board had possessed. This seems in accord with correct standards as to delegation of authority to act within proper limits prescribed by Congress. See Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. Whether the delegation, assuredly proper in subject-matter and lawfully defined in scope, purpose, and manner of exercise, should have been to an executive department, was within the sound discretion of Congress. As it did not confer upon anyone functions it was bound to keep and exercise for itself, there was no failure to preserve the required separation of governmental powers. Regulatory powers wide in scope have been lawfully conferred upon the Secretary of Agriculture. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524. Upon the Secretary of Labor. Oceanic Steam Navigation Co. v. Stranahan, 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013. And upon the Secretary of the Interior. United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074.

The allegation that the President acted without adequate hearings and findings is but a conclusion. His order stated that he had investigated, and the contrary not appearing, the presumption of regularity is sufficient to support the official act of a public officer. United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131; Dakota Central Telegraph Co. v. South Dakota, 250 U.S. 163, 39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623.

The bill contains its own refutation of the charge of unjust discrimination because other steamship companies have not been

subjected to a like order. It is alleged that this complainant is in a different situation from those against whom a different order was issued. There is no showing that there has been any arbitrary or intentionally unfair discrimination against his complainant in favor of others in like situation. See Mackay Telegraph & Cable Co. v. City of Little Rock, 250 U.S. 94, 39 S.Ct. 428, 63 L. Ed. 863. Nor is the fact that the complainant is subject to a penalty sufficient to show irreparable injury. Though it is $100 per day, it may well be only enough to encourage compliance without discouraging resort to the courts where, as here, there are reasonable grounds for so doing. See Life & Casualty Ins. Co. of Tenn. v. McCray, 291 U.S. 566, 54 S.Ct. 482, 78 L.Ed. 987.

Motion for an injunction denied and bill dismissed.