POLK COMPANY ET AL. *v.* GLOVER, COUNTY SOLICITOR, ET AL.

No. 29.   Argued October 20, 1938.—Decided November 7, 1938.

6

■■■■■■■■■■■■

■■■■■■■■■■■■

*Messrs. H. Thomas Austern* and *John B. Sutton* for appellants.

*Messrs. Wm. C. Pierce* and *John L. Graham,* Assistant Attorney General of Florida, with whom *Messrs. George Couper Gibbs,* Attorney General, and *E. Glenn Grimes* were on the brief, for appellees.

PER CURIAM.

Plaintiffs, engaged in the business of canning citrus products grown in the State of Florida, challenged by this suit the validity of Chapter 17,783 of the Acts of 1937 of that State upon the ground that the statute violated the state constitution and also the commerce clause, and the due process and equal protection clauses of the Fourteenth Amendment, of the Federal Constitution. An interlocutory injunction was sought and a court of three judges was convened.

Reciting that certain persons are engaged in importing into Florida citrus fruit and citrus juice produced and canned elsewhere, and in labeling the same in Florida whence it is sold, with the result that dealers are deceived and producers and canners in Florida are injured, the statute provides that every label upon any container of canned citrus fruit or juice shall show accurately the name of the State or country in which the fruit or juice was produced, and that every container used for such fruit or juice produced in Florida "shall have stamped into or embossed upon the tin, glass or other substance of which such container is made" the word "Florida," and it is made unlawful for anyone to use any container

bearing the name "Florida" for any canned citrus fruit or juice produced elsewhere. The Florida Citrus Commission is authorized to prescribe the method of marking the labels and embossing the containers. Violation of the Act is punishable by imprisonment or fine, or both, and by confiscation of all goods misbranded.

The Act was approved June 10, 1937, and provided that it should take effect immediately. On September 4, 1937, the Commission resolved that "for the present" it felt that "an educational and adjustment period" was necessary before the labeling provisions were enforced. On October 4, 1937, the Commission adopted regulations prescribing the method of stamping or embossing the cans.

The bill of complaint set forth facts relating to the character of the trade, the process of canning and the trade practices as to labeling. It alleged that plaintiffs were without knowledge as to the authority of the Commission to postpone the enforcement of the labeling provisions of the Act and had no assurance from any enforcement officer that failure to comply therewith would not result in criminal prosecution or in the confiscation of products packed; that the "classification, sorting and overprinting of both packer and private brand labels now on hand" would result in immediate increased cost to each of the plaintiffs in an amount in excess of $3,000; that as to the required embossing, the statute made no provision for the use of the tin containers not so embossed which the plaintiffs had on hand in a value in excess of $33,000; that these containers would no longer be usable in the packing of canned citrus products if the statute were enforced; that the embossing of the tin plate of the can would cause what is known as "hydrogen flippers" due to action of the acid in the fruit upon the sheet steel underlying the tin plate through the weakening or penetration of the tin covering; that this would result in "un-

told spoilage, swelling of cans, unmarketability and loss of products, loss of consumers' good will, and other damage," in an amount not presently calculable; and that the requirement of embossing would cause each of the plaintiffs a loss in excess of $3,000 because of the refusal of distributors to purchase and handle cans so embossed. The effect of the Act upon plaintiffs' trade was described in support of the claim that the enforcement of its provisions would inflict immediate and irreparable injury.

Defendants, including the Florida Citrus Commission (which intervened) and other officials, filed answers putting in issue the allegations as to the injurious operation of the statute. They also moved to dismiss the bill of complaint upon the ground that it failed to state a cause of action. On the application for interlocutory injunction, the parties submitted affidavits setting forth facts in support of their respective contentions. At the same time the court heard the motions to dismiss. Injunction was denied, the motions to dismiss were granted, and a final decree was entered accordingly. 22 F. Supp. 575. This is a direct appeal from the decree of dismissal. 28 U. S. C. 380.

The District Court made findings. After reciting the statements in the preamble of the statute, the court found that no sufficient facts had been shown by affidavits or otherwise to overcome the findings of fact so made by the legislature; that the statute was enacted in pursuance of the police power of the State and that all citrus fruit canners in Florida were affected by its provisions, without exceptions; that plaintiffs had on hand unembossed containers of a value in excess of $33,000 which would no longer be usable if the Act were enforced, but that "such containers could be used for packing of vegetables or commodities other than citrus products" and that there was no showing "that they could not be exchanged with the manufacturer for properly embossed

cans at little or no extra expense"; that if the practices and abuses as found by the legislature were not stopped "the price which the producer of citrus fruit grown in Florida receives for his product will be greatly reduced" and he will "ultimately be forced out of business"; that it did not sufficiently appear that the embossing of cans would be injurious or harmful to the citrus contents; that, "apart from the conflicting affidavits, numerous embossed cans were produced before the court, some of which were used for canning citrus products and there was no showing that the contents of such cans had been injuriously affected by the embossing."

At the same time the court made an order restraining the enforcement of the statute pending this appeal, upon the plaintiffs giving a bond. That order recited that the court was of the opinion "that the questions involved are novel and of great importance" and further that the plaintiffs "will suffer irreparable loss and damage during said appeal" if the Florida statute is enforced and this Court should reverse the decree.

We are of the opinion that the District Court erred in dismissing the bill of complaint. Plaintiffs did not submit the case to be decided upon the merits upon the bill, answers and affidavits. Defendants' motion to dismiss, like the demurrer for which it is a substitute (Equity Rule 29) was addressed to the sufficiency of the allegations of the bill. For the purpose of that motion, the facts set forth in the bill stood admitted. For the purpose of that motion, the court was confined to the bill and was not at liberty to consider the affidavits or the other evidence produced upon the application for an interlocutory injunction. But the findings of the court indicate that that evidence, in part at least, underlay the final decree it entered.

We think that the facts alleged in the bill were sufficient to entitle the plaintiffs to an opportunity to prove

their case, if they could, and that the court should not have undertaken to dispose of the constitutional issues (as to which we intimate no opinion) in advance of that opportunity. The allegations of the bill as to trade conditions and practices, and as to the effect of the required embossing of cans, raise particular questions which can hardly be said to lie within the range of judicial notice. The salutary principle that the essential facts should be determined before passing upon grave constitutional questions is applicable. See *Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194, 211–213, and cases cited. And that determination requires a hearing in due course upon the issues raised by the pleadings.

The decree is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE BLACK, dissenting.

A Florida law designed to prevent fraud, requires that citrus products grown and canned in Florida carry the label "Made in Florida," and that containers of these products be embossed with the single word, "Florida." The majority do not decide that this state law violates the Federal Constitution. Nor do they decide that proof of the allegations of petitioners' bill of complaint will show that the Florida law violates the Constitution. While petitioners are held entitled to produce evidence, they are not held entitled to relief if they prove their entire bill. If on remand petitioners prove every allegation in their complaint, still—after time and state funds have been spent in taking evidence—either the District Court or this Court may decide that the complaint did not allege facts sufficient to invalidate the law. In the meantime, the State of Florida is forced to litigate the validity of its duly enacted law, with no decision on its

substantial defense that petitioners' bill is wholly defective because of "insufficiency of fact to constitute a valid cause of action"[1] or "failure to state a claim upon which relief can be granted."[2]

The important consequences of this remand raise far more than mere questions of procedure. State laws are continually subjected to constitutional attacks by those who do not wish to obey them. Accordingly, it becomes increasingly important to protect state governments from needless expensive burdens and suspensions of their laws incident to federal court injunctions issued on allegations that show no right to relief. The operation of this Florida law has been suspended. Complaints seeking to invalidate and suspend the operation of state laws by invoking the "vague contours" of due process[3] can irreparably injure state governments if we accept as a "salutary principle" the rule that all such complaints—though failing to state a cause of action—raise "grave constitutional questions" which require that "the essential facts shall be determined." Under this declared "salutary principle" specially applying to bills attacking the constitutionality of legislative acts, such bills must be defended against even though they fail to state a cause of action. This is contrary to the traditional general rule that fatally defective bills are dismissed on motion (formerly demurrer) in order to prevent needless litigation, delay and expense.[4] The application of this special prin-

---

[1] Rule 29, Rules of Practice for the Courts of Equity of the United States, effective February 1, 1913.

[2] Rule 12 (b), "Federal Rules of Civil Procedure."

[3] Cf. Mr. Justice Holmes dissenting in *Adkins* v. *Children's Hospital*, 261 U. S. 525, 568.

[4] Story's Equity Pleadings (10th ed.) §§ 446, 447, 526. The ". . . proper rule of pleading would seem to be, that, when the case stated by the bill appears to be one in which a court of equity will refuse its aid, the defendant should be permitted to resist it by demurrer. . . . 'If the case of the plaintiff as stated in the bill will not entitle

ciple to bills attacking State legislation seriously under-
mines the historical presumption of the validity of state
acts.[5] A refusal to determine whether or not the allega-
tions of the bill are sufficient to strike down an Act until
evidence has been heard adds a special burden to the de-
fense of state legislation, as though legislation were to be
presumed invalid. I do not believe this principle leads
to salutary results and I am of the opinion that we should
now determine whether the allegations of the bill, if
proven, would entitle petitioners to relief.

The bill alleges that the Florida statute violates the
Commerce Clause of the Constitution[6] and the Due

---

him to a decree, the judgment of the court may be required on
demurrer whether the defendant ought to be compelled to answer
the bill' . . ." This principle is calculated "to save the parties from
useless expense and trouble in bringing it [a suit] to issue. . . ."
*Maxwell* v. *Kennedy*, 8 How. 210, 222, 223; cf. *Southern Pacific Co.*
v. *Campbell*, 189 F. 182, aff'd 230 U. S. 537; *Missouri Pacific R.*
*Co.* v. *Norwood*, 42 F. 2d 765, aff'd 283 U. S. 249; *Pacific States Co.*
v. *White*, 9 F. Supp. 341, aff'd 296 U. S. 176; *Isbrandtsen-Moller*
*Co.* v. *United States*, 14 F. Supp. 407, aff'd 300 U. S. 139.

[5] See *Ogden* v. *Saunders*, 12 Wheat. 213, 270.

"The complaint contains much by way of argument, assertions
as to questions of law together with inferences and conclusions of
the pleader as to matters of fact. These are not deemed to be
admitted by motion to dismiss. . . . The state laws [regulating train
crews and assailed as violative of the Federal Constitution] are
presumed valid. . . . The burden is on the plaintiff by candid and
direct allegations to set forth in its complaint facts sufficient plainly
to show the asserted invalidity." *Missouri Pacific R. Co.* v. *Norwood*,
283 U. S. 249, 254, 255. "Every exertion of the police power, either
by the legislature or by an administrative body, is an exercise of
delegated power. . . ." Where "the regulation is within the scope of
authority legally delegated, the presumption of the existence of facts
justifying its specific exercise attaches alike to statutes, to municipal
ordinances, and to orders of administrative bodies." *Pacific States*
*Co.* v. *White*, 296 U. S. 176, 185, 186.

[6] The asserted conflict with the Commerce Clause does not rest
upon proof of fact. It must be decided by a comparison of the
Florida law and the Federal Pure Food and Drug Act and regulations

Process Clause of the Fourteenth Amendment. The court below held in the alternative that petitioners failed to make "sufficient showing either by affidavit or by the allegations of the bill to uphold the contention that the Act deprives the plaintiffs of their property without due process of law."

Even according to the presently prevailing interpretation of the Due Process Clause of the Fourteenth Amendment, I do not believe that the averments of petitioners' bill can sustain invalidation of this duly enacted Florida statute. The statute contains a legislative finding that "certain persons, firms and corporations in the State of Florida" had engaged "in the practice" of deceiving customers into the belief that non-Florida canned citrus products had been produced in Florida. The legislature further found that this practice operated to "the injury and detriment of the producers and canners of citrus fruit and citrus juices in the State of Florida; . . ." and concluded that an effective method to prevent this fraudulent practice was to require the publication of the truth upon labels and containers. Averments of petitioners' bill, in their strongest light, go no further than to deny this legislative finding. They say to require publication of the truth in this manner on the cans and labels is burdensome [7] and violates the Due Process Clause of the Fourteenth Amendment. They further charge here that this finding of the legislature is a "feigned" assumption and that "the facts alleged [in petitioners' bill] not only show the nonexistence of any basis for such assumption but demonstrate that the law will cause serious injury to

thereunder. That question can—and should—be decided now on the allegations of the bill. The court below found no conflict and I agree with its findings. See, *Savage* v. *Jones*, 225 U. S. 501, 533.

[7] "We may not test in the balances of judicial review the weight and sufficiency of the facts to sustain the conclusion of the legislative body, nor may we set aside the ordinance because compliance with it is burdensome." *Standard Oil Co.* v. *Marysville*, 279 U. S. 582, 586.

14

the packer and marked curtailment of the sale of citrus products grown and canned in Florida." Petitioners' argument for reversal largely involves "this disputed question as to the existence of facts concerning the basis for the law, and . . . the preamble statement of the alleged evil which gave rise to its enactment. . . ."

Because, it is said, the embossing and labeling requirements raise grave constitutional issues, the State of Florida will be required to defend against two issues raised by petitioners' bill. The State must answer the charges: first, that—contrary to the legislative finding—there was no fraudulent practice under which the dealers in canned citrus products were led to believe that they were buying Florida products when in fact the canned goods were produced outside that State; second, that truthful labeling and embossing as required by the statute would financially injure citrus growers, producers, canners and the people of Florida rather than benefit them as found by the legislature.

In attacking the legislative finding that the Act would bestow benefits on the State of Florida, petitioners allege that the law would require petitioners to spend extra money for labels; might cause them to lose some business; would afford the opportunity for spoiling and swelling of some cans on the theory that embossing without spoiling is difficult and could weaken the tin of containers thereby permitting acid to corrode the steel underneath the tin; that petitioners will suffer loss because they have on their hands cans that have not been embossed; and that Florida already has laws adequate to protect itself from fraudulent sales.

With reference to a state law regulating containers (for lard) this Court has already said: [8]

"This may involve a change of packing by the company and the cost of that change, but this is a sacrifice

---

[8] *Armour & Co.* v. *North Dakota*, 240 U. S. 510, 516.

the law can require to protect from the deception of the old method."

The real issue raised by petitioners' bill is not the cost incident to changing from the old method of labeling and embossing, but whether the Florida legislature—convinced that fraud existed—had the constitutional right to determine the policy which it believed would protect the people of Florida from that fraud. The cause is now sent back to a federal District Court to review the facts underlying the policy enacted into law by the legislature.

Under our constitutional plan of government, the exclusive power of determining the wisdom of this policy rested with the legislature of Florida subject to the veto power of Florida's governor.[9] This Court has taken judicial notice of the fact that citrus fruits support one of the great industries of the State of Florida, and held that it "was competent for the legislature [of Florida] to find that it was essential for the success of that industry that its reputation be preserved in other States wherein such fruits find their most extensive market." [10] The legislators of Florida are peculiarly qualified to determine the

[9] "The power of a State to prescribe standard containers in order to facilitate trading, to preserve the condition of the merchandise, to protect buyers from deception, or to prevent unfair competition is conceded. Such regulation of trade is a part of the inspection laws; was among the earliest exertions of the police power in America; has been persistent; and has been widely applied to merchandise commonly sold in containers.

"Different types of commodities require different types of containers; and as to each commodity there may be reasonable difference of opinion as to the type best adapted to the protection of the public. Whether it was necessary in Oregon [Florida?] to provide a standard container for raspberries and strawberries [citrus products?]; and, if so, whether that adopted should have been made mandatory, involve questions of fact and of policy, the determination of which rests in the legislative branch of the state government."

*Pacific States Co.* v. *White,* 296 U. S. 176, 181, 182.

[10] *Sligh* v. *Kirkwood,* 237 U. S. 52, 61.

16

policies relating to one of their State's greatest industries. Legislatures, under our system, determine the necessity for regulatory laws, considering both the evil and the benefits that may result. Unless prohibited by constitutional limitations, their decisions as to policy are final. In weighing conflicting arguments on the wisdom of legislation they are not confined within the narrow boundaries of a particular controversy between litigants. Their inquiries are not subject to the strict rules of evidence which have been found essential in proceedings before courts. Legislators may personally survey the field and obtain data and a broad perspective which the necessary limitations of court litigation make impossible.

The legislative history of the Florida statute under review indicates that it was given the careful and cautious consideration which regulation of one of the State's major industries deserved.[11] Companion measures were offered in the Florida House and Senate on the same day— April 28, 1937. In the House the measure was referred to the Committee on Citrus Fruits. The existence of such a standing committee is itself indicative of a legislative procedure designed to give careful consideration to legislation concerning this important industry. May 4, 1937, the House Committee voted to report the bill favorably, sixteen ayes, no nays, six members absent. June 1, the bill was made the special order of business and on June 2, the companion Senate bill previously passed by that body by a vote of twenty-four to one was substituted for the House measure and passed by a vote of seventy to nothing.[12]

---

[11] As to an "added reason for applying the presumption of validity" where a statute has been carefully enacted, compare, *Pacific States Co.* v. *White, supra,* p. 186.

[12] Journal of the Senate of Florida, Reg. Sess. 1937, 508; Journal of the House of Florida, Reg. Sess. 1937, 837.

In the face of this history, petitioners insist that this statute duly passed by the legislature and signed by the Governor of Florida violates the Due Process Clause as an unreasonable, capricious, unjust, harsh and arbitrary measure. Therefore, if petitioners are to obtain relief on this theory it must be found that this statute was "fixed or arrived at through an exercise of will, or by caprice, without consideration or adjustment with reference to principles, circumstances or significance"; or that it was "despotic, autocratic [or] high-handed"; or that it is "irrational, senseless" or passed by those "not endowed with reasoning ability; non-conformable to reason"; or that it is capricious or freakish which "denotes an impulsive seemingly causeless change of mind, like that of a child or a lunatic." [13]

The cause is remanded for the court below to determine whether the legislative requirement that cans and labels be truthfully marked is arbitrary, unreasonable, capricious, unjust or harsh. This makes it necessary for the court to weigh and pass upon the relative judgment, poise and reasoning ability of the one legislator who voted against the law, as contrasted with the ninety-four legislators and the governor who favored it. I do not believe that obedience to this carefully considered legislative enactment would violate any of petitioners' property rights without due process of law or that—even under prevailing doctrine—the averments of the complaint indicate that no known or supposed facts could sustain it.[14] The allegations of the complaint in this cause raise no more than questions of policy for legislative determination, which the Florida legislature has already considered and which can be presented to other legislatures in the future.

[13] See, Webster's New International Dictionary, 2nd ed., 1939.

[14] Cf., *Standard Oil Co.* v. *Marysville*, 279 U. S. 582; *Hebe Co.* v. *Shaw*, 248 U. S. 297, 304.

18

This case offers an appropriate opportunity to return to the wholesome principle stated by this Court in 1888, in *Powell* v. *Pennsylvania,* 127 U. S. 678, 686, in the following language:

"If all that can be said of this legislation is that it is unwise, or unnecessarily oppressive to those manufacturing or selling wholesome oleomargarine, as an article of food, their appeal must be to the legislature, or to the ballot-box, not to the judiciary. The latter cannot interfere without usurping powers committed to another department of government."

The majority opinion apparently does not decide that Florida has no power to require that the origin of citrus products canned in Florida shall be truthfully shown.[15] Petitioners' bill insists that Florida exercised its power so unwisely as to violate rights of property without due process, because, as alleged, canning frauds did not exist, and could be prevented by a wiser statute, less expensive and burdensome to petitioners. Thus they challenge the wisdom of the Florida legislation. On remand of petitioners' bill which fails to show that the Florida law is invalid, may the Court, on evidence outside the bill, hold that the law violates due process because the court is convinced that the legislature might have chosen a

---

[15] "Recognized elements of inspection laws have always been quality of the article, form, capacity, dimensions, and weight of package, mode of putting up, and marking and branding of various kinds, . . ."

In "the exercise of . . . [legislative] discretion, and of . . . [a State's] power to prescribe the method in which its products shall be fitted for exportation, it may direct that a certain product, while it remains 'in the bosom of the country' and before it has become an article 'of foreign commerce or of commerce between the States,' shall be encased in such a package as appears best fitted to secure the safety of the package and to identify its contents as the growth of the State, and may direct that the weight of the package, and the name of the owner of its contents, shall be plainly marked on the package, . . ." *Turner* v. *Maryland,* 107 U. S. 38, 55, 57.

wiser, less expensive and less burdensome regulation? If a court in this case and under this bill has this power, the final determination of the wisdom and choice of legislative policy has passed from legislatures—elected by and responsible to the people—to the courts.[16] I believe, in the language of the *Powell* case, *supra*, that since all that has been "said of this legislation is that it is unwise, or unnecessarily oppressive to those" canning citrus products, that petitioners' "appeal must be to the legislature, . . . not to the judiciary." I would affirm.

---

[16] With reference to a state law regulating labels and containers for condensed milk, this Court said, "If the character or effect of the article as intended to be used 'be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury,' or, we may add, by the personal opinion of judges, 'upon the issue which the legislature has decided.' " *Hebe Co.* v. *Shaw*, 248 U. S. 297, 303.