Mrs. Margaret M. LARCHE et al., in Their Individual Capacities and as Registrars of Voters in and for Their Parishes, of the State of Louisiana

v.

John A. HANNAH et al., Individually and as Members of The Commission on Civil Rights.

J. A. H. SLAWSON et al.,

v.

John A. HANNAH et al.

Civ. A. Nos. 7479, 7480.

United States District Court
W. D. Louisiana,
Shreveport Division.

July 12, 1959.

Jack P. F. Gremillion, Atty. Gen., George M. Ponder, First Asst. Atty. Gen., William M. Shaw and Ferdinand A. Cashio, Asst. Attys. Gen., M. E. Culligan, New Orleans, La., John E. Jackson, Jr., New Orleans, La., William P. Schuler, New Orleans, La., N. Cleburn Dalton, Baton Rouge, La., W. Scott Wilkinson, Frank J. Looney, Sr., Shreveport, La., Louis H. Padgett, Jr., Bossier City, La., Albin P. Lassiter, Monroe, La., Fred Jackson, Homer, La., Thompson L. Clarke, St. Joseph, La., Cameron C. Minard, Columbia, La., H. Lester Hughes, Natchitoches, La., Richard H. Kilbourne, Clinton, La., France W. Watts, Jr., Franklinton, La., J. Reuel Boone, Many, La., for plaintiffs, Mrs. Margaret M. Larche, and others.

William M. Shaw, Asst. Atty. Gen., State of Louisiana, for plaintiffs, J. A. H. Slawson and others.

Robert G. Storey, Vice-Chairman, Dallas, Tex., Gordon M. Tiffany, Director, Washington, D. C., Berl I. Bernhard, Chevy Chase, Md., A. William Mottolese, Washington, D. C., Attys. for Commission on Civil Rights, Charles Ed. Clark, Falls Church, Va., Legal Assistant to the Honorable Robert G. Storey, for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

We are called upon here to pass tentatively upon one of the burning issues of our time—the propriety and validity of the Rules and Proceedings of the Civil Rights Commission, as established by Congress in September, 1957.[1]

That Commission now proposes to hold a hearing, in the Federal Court room at Shreveport, Louisiana, on July 13, 1959, to investigate purported violations of the civil voting rights of some 67 persons,

---

1. Public Law 85–315, 71 Stat. 634, 42 U.S.C.A. §. 1975a–1975e.

who are said to have filed sworn complaints with the Commission. Pursuant to, and in implementation of, its plans, the Commission has caused subpoenas, and subpoenas duces tecum, to be served upon the plaintiffs in these suits, commanding them to be present and give testimony at the hearing, and requiring the 16 Registrars of Voters, who are plaintiffs [2] in Civil Action No. 7479, to bring with them, for inspection and copying by the Commission, a large number of records from their offices.

These suits, brought against the members of the Commission, and the Commission itself, were filed on July 10, 1959, and are addressed to the equitable powers of this Court.[3] They seek to stay the effectiveness of the Commission's subpoenas and subpoenas duces tecum, and to restrain and enjoin the conduct of the proposed hearing itself,[4] which, plaintiffs aver, under the Rules of Procedure adopted by the Commission, would violate their fundamental constitutional rights and cause them immediate and irreparable damage. Moreover, praying that a three-judge court [5] be convened for that purpose, the Registrar-plaintiffs ask that the Act creating the Commission be declared [6] violative of the Federal Constitution, and thus unenforceable.

Detailing their complaints, supported by sworn affidavits and exhibits attached, (and here briefly paraphrased), the Registrar-plaintiffs, in Civil Action No. 7479, allege that between June 29, 1959, and July 6, 1959, each of them were served with subpoenas and subpoenas duces tecum, issued by the Chairman of the Commission, commanding them to appear and testify before the Commission on July 13, 1959, and to bring their records with them; that they have not been informed of the nature of the complaint or complaints against them, nor have they been assured that they will be confronted with the complaining witnesses; that the Commission repeatedly has informed the Attorney General of Louisiana, verbally and in writing,[7] that it would not, under any circumstances, furnish plaintiffs with, or permit them to examine the written complaints filed against them, nor would it divulge the name or names of the secret complainants, all of which is arbitrary and unreasonable, and in violation of plaintiffs' fundamental rights.

They further aver that they, at all times, have complied with the laws of the State of Louisiana, but that the subpoenas served upon them would require them to violate such laws,[8] in that the

2. These plaintiffs are the duly appointed and constituted Registrars of Voters in the Louisiana Parishes (counties) of Morehouse, Ouachita, Webster, Bossier, Claiborne, Bienville, DeSoto, East Carroll, Madison, Jackson, Red River, Caldwell, Caddo, East Feliciana, West Feliciana, and Washington, all but the last three of which are located in the northern part of the State.

3. Also alleging jurisdiction in this Court based upon Federal questions, 28 U.S. C.A. § 1331, and Diverse Citizenship, 28 U.S.C.A. § 1332.

4. Pursuant to 28 U.S.C.A. § 2284(3).

5. 28 U.S.C.A. §§ 2282, 2284.

6. Under the Declaratory Judgment Statute, 28 U.S.C.A. § 2201 et seq.

7. The writings are attached to the complaint.

8. LSA–R.S. 18:169. *"Control and custody of registration books and other records.*

"The books of registration, together with all the records, registry stub books, and all other books and paraphernalia used for the conduct of the registrar's office, shall at all times be kept under the control of and in the custody of the registrar at his principal office. They shall not be removed therefrom for any purpose except upon an order of a competent court, except the parish register and registration certificate books when these are necessary for the registration of voters, when registration is permitted at places other than at the central office."
LSA–R.S. 18:251. *"Custody of records.*

"Except as otherwise provided in this Title, the registers, records, files, books, and paraphernalia used for the conduct of the registrar's office shall at all times be kept under the control and in the custody of the registrar at his principal office and shall be removed therefrom only on order of a competent court. Added Acts 1952, No. 415, § 2."

794

Registrars' records legally may not be removed from their offices, except "upon an order of a competent court", criminal penalties being provided for violations of these statutes;[9] and that the Commission is not a "competent court". Hence, they say, to comply with the subpoenas, they would be violating the State laws, and subjecting themselves to the penalties thus provided.

These plaintiffs further allege that, attached to the subpoenas served upon them, was a mimeographed document entitled "Rules of Procedure for hearings of the Commission on Civil Rights" in which appears the following: "(i) Interrogation of witnesses shall be conducted only by members of the Commission or by authorized staff personnel"; and that thereby plaintiffs are deprived of their constitutional right to cross-examine witnesses who may testify against them. They contend that the Commission and its members thus are acting in an *ultra vires* manner in 1) attempting to force plaintiffs to testify at the proposed hearing without first advising them of the nature of the complaint or complaints existing; 2) without allowing plaintiffs to be confronted by the complaining witnesses; 3) not allowing plaintiffs to have counsel empowered to fully represent their interests in such hearing; 4) not allowing cross-examination of the complaining witnesses; and 5) causing irreparable damage to plaintiffs by requiring them to violate the Laws of Louisiana, which would subject them to serious criminal penalties. In their brief, they also urge, as a direct incident of the hearing itself, with unnamed and unknown witnesses testifying against them, not subject to cross-examination by plaintiffs' counsel, that they will be wrongfully accused of violations of both Federal[10] and State[11] laws, without adequate opportunity to disprove such accusations, and thus be.

9. LSA–R.S. 18:221. *"Violations generally; successive offenses.*

"No person shall violate any provision of this Chapter for which no penalty is specifically provided, or wilfully fail or refuse to perform an act or duty required under this Chapter.

"Whoever violates this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, and imprisoned for not less than ninety days nor more than six months. The penalty shall be doubled for the second or any succeeding offense."

10. 18 U.S.C.A. § 242. *"Deprivation of rights under color of law*

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, or account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

42 U.S.C.A. § 1983. *"Civil action for deprivation of rights*

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

11. LSA–R.S. 14:134. *"Malfeasance in office*

"Malfeasance in office is committed when any public officer or public employee shall:

"(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or

"(2) Intentionally perform any such duty in an unlawful manner; or

"(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.

"Whoever commits the crime of malfeasance in office shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both."

And see LSA–R.S. 18:221, footnote 9.

held up, by the Commission's actions, to public opprobrium and scorn, all to their irreparable injury and damage.

They further contend that the Commission, being an agency of the Executive branch of the Federal Government, is subject to the provisions of the Administrative Procedure Act,[12] and, as such, is required to state explicitly the charges against plaintiffs, to permit them to be confronted with the witnesses against them, and to allow their counsel fully to cross-examine such witnesses. Accordingly, these plaintiffs seek the relief hereinabove outlined.

In general, the plaintiffs in Civil Action No. 7480, who are individual citizens of Louisiana, make the same allegations and contentions as those in No. 7479, except that they have not been called upon to produce any official records. They do not challenge the constitutionality of the Act creating the Commission, but otherwise their prayer for relief is substantially similar to that in No. 7479.

Several days prior to July 10, 1959, we were advised by plaintiffs' counsel that they would file these suits on the date indicated. While, as a general rule, applications for temporary restraining orders are considered *ex parte,* solely on the face of the verified complaint and any attached documents, because of the national importance of the matters involved, we immediately notified counsel for the Commission, and its Vice-Chairman, Honorable Robert G. Storey (a personal friend of the Court's, of long standing) of our information, and invited them to be present for a hearing on the applications. The suits were filed at 1:30 p. m. on July 10, and at 2:00 p. m., in open Court, these gentlemen, and counsel for plaintiffs, being present, we convened Court, but immediately recessed in order to give the Commission's representatives opportunity to study the complaints and briefs filed by plaintiffs. At 3:30 p. m., we reconvened and heard oral arguments, from both sides, until 5:20 p. m., at which time the matter of the restraining orders was submitted for decision on the oral arguments and briefs filed by the proponents and opponents of the applications. We have considered the able arguments, studied the respective briefs and authorities cited, and now proceed to our ruling. Necessarily, because of the time element, we have been compelled, under great pressure, to consider the questions rather hastily; and we reserve the right to alter our views, if necessary, after more mature deliberation

■ The Court has jurisdiction. 28 U.S.C.A. §§ 1331, 1332, 2201, 2282, 2284. Jones v. Securities and Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015.

■ We are not strongly impressed with the Registrar-plaintiffs' contention that the subpoenas duces tecum, if complied with, would subject them to criminal penalties under Louisiana law. Literally, of course, if they directly complied without more, they are correct in their understanding of the State law. Practically, however, another and different aspect is presented, for under the Civil Rights Commission Act they can refuse to produce the records, without penalties of any kind, and the only recourse the Commission would have would be to request the Attorney General of the United States to apply to this Court, under 42 U.S.C.A. § 1975d(g) [13] for an

12. 5 U.S.C.A. § 1001 et seq.

13. *"Aid of courts in enforcing subpoenas*
"(g) In case of contumacy or refusal to obey a subpena, any district court of the United States or the United States court of any Territory or possession, or the District Court of the United States for the District of Columbia, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Attorney General of the United States shall have jurisdiction to issue to such person an order requiring such person to appear before the Commission or a subcommittee thereof, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation; and any failure to obey such order of the court may be

order requiring their production. Plaintiffs then would be protected against State prosecution by the very terms of LSA–R.S. 18:236,[14] as well as by LSA–R.S. 18:169 (see footnote 8), for this Court clearly is a "competent court", within the meaning of those Statutes.

■ Likewise, plaintiffs would suffer no immediate federal penalties under the Act for refusal either to appear or to testify, but would be subject to an enforcement order from this Court, which would see to it that their constitutional rights against self-incrimination are adequately protected. Moreover, under the Act, since their counsel are entitled to be present, they could be advised, at each step of the proceedings, whether to claim the protection of the Fifth Amendment, even though, in this day, the general public has come to consider such a claim as tantamount to a plea of guilty, particularly in response to "loaded" questions.

We are strongly of the opinion, however, that plaintiffs' remaining grounds for immediate relief are well taken:

■■ *First*, it appears rather clear, at this juncture, that the Civil Rights Commission is an "agency" of the Executive branch of the United States, within the meaning of that term as defined at 5 U.S.C.A. § 1001(a).[15] See also 42 U.S.C.A. § 1975(a).[16] It performs quasi-judicial functions in its hearings, its fact findings, its studies of "legal developments constituting a denial of equal protection of the laws under the Constitution", and its appraisal of "the laws and policies of the Federal Government" in the same respect.[17] It "adjudicates" by

---

punished by said court as a contempt thereof. Pub.L. 85–315, Part I, § 105, Sept. 9, 1957, 71 Stat. 636."

14. "§ 236. *Alteration, defacing, destruction or removal of records; penalty*

"No registrar, deputy, clerk, or employee of any registrar, or any person having, or having been given access to, or right of inspection, copying or photographing of any book, card, record, or other document pertaining to the registration of voters, shall illegally or improperly alter, add to, deface, destroy, or remove same from the custody of the registrar.

"Whoever violates this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, and imprisoned for not less than sixty days nor more than two years. However, nothing in this Section prevents a competent court from requiring, by proper order, the production by the registrar in court, in any proceeding pending therein, of any document, book, card, or record necessary and material, in the opinion of the court, to the determination of the proceeding; such documents do not become permanent records of the court, but shall be returned to the custody of the registrar immediately after inspection by the court. The court may require a photostatic copy thereof to be placed in the record. Added Acts 1952, No. 415, § 2."

15. "(a) 'Agency' means each authority (whether or not within or subject to review by another agency) of the Govern-

ment of the United States other than Congress, the courts, or the governments of the possessions, Territories, or the District of Columbia. Nothing in this chapter shall be construed to repeal delegations of authority as provided by law. Except as to the requirements of section 1002 of this title, there shall be excluded from the operation of this chapter (1) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them, (2) courts martial and military commissions, (3) military or naval authority exercised in the field in time of war or in occupied territory, or (4) functions which by law expire on the termination of present hostilities, within any fixed period thereafter, or before July 1, 1947, * * *."

16. "§ 1975. *Commission on Civil Rights —Establishment*

"(a) There is created in the *executive branch* of the Government a Commission on Civil Rights (hereinafter called the 'Commission')." (Emphasis supplied.)

17. 42 U.S.C.A. § 1975c. "*Duties; reports; termination*

"(a) The Commission shall—

"(1) investigate allegations in writing under oath or affirmation that certain citizens of the United States are being deprived of their right to vote and have that vote counted by reason of their color, race, religion, or national origin; which writing, under oath or affirmation, shall set forth the facts upon which such belief or beliefs are based.

its rulings upon the admissibility of evidence at its hearings and by its determinations of what is or is not the truth in matters before it. Thus we think that the Commission is subject to the provisions of section 5 of the Administrative Procedure Act,[18] which requires, among other things that persons affected by agency action " * * * shall be timely informed of * * * the matters of fact and law asserted." Here that would encompass the *nature* of the charges filed against plaintiffs, as well as the matters of fact and law wherein the complainants' voting rights allegedly have been violated. The Commission also is subject to section 6 which would require it to grant plaintiffs the right "to conduct such cross-examination as may be required for a full and true disclosure of the facts."[19] This, by its Rules, the Commission refuses to do, and in so doing, regardless of its well intentioned motives, it violates the terms of that Act. Plaintiffs are entitled, therefore, to protection against these Rules, which would deprive them of their plain rights under the Act.

■ *Second*, while the statute creating the Commission inferentially permits it to adopt reasonable Rules, 42 U.S.C.A. § 1975a(b), there is no provision whatsoever in the law to the effect that such Rules may include those here complained of, which plainly violate plaintiffs' basic rights to know in advance with what they are charged, to be confronted by the witnesses against them,[20] and to cross-examine their accusers. We cannot believe that Congress intended to deny these fundamental rights to anyone, and because of such belief it is our opinion that these Rules of the Commission are *ultra vires* and unenforceable. Therefore, plaintiffs are entitled to immediate relief against them.

*Third*, entirely aside from the statutory questions just discussed, the Courts of the United States, and their Anglo-Saxon predecessors, always have seen to it that, in hearings or trials of all kinds, persons accused of violating laws must be adequately advised of the charges against them, confronted by their accusers, and permitted to search for the truth through thorough cross-examination. In Jones v. Securities and Exchange Commission, 298 U.S. 1, 27, 56 S.Ct. 654, 662, 80 L.Ed. 1015, the Supreme Court said:

" * * * 'A general, roving, offensive, inquisitorial, compulsory, investigation, conducted by a commission without any allegations, upon no fixed principles, and governed

"(2) study and collect information concerning legal developments constituting a denial of equal protection of the laws under the Constitution; and

"(3) appraise the laws and policies of the Federal Government with respect to equal protection of the laws under the Constitution.

"(b) The Commission shall submit interim reports to the President and to the Congress at such times as either the Commission or the President shall deem desirable, and shall submit to the President and to the Congress a final and comprehensive report of its activities, findings, and recommendations not later than two years from September 9, 1957."

18. 5 U.S.C.A. § 1004. *"Adjudications*
\* \* \* \* \*
"(a) Persons entitled to notice of an agency hearing shall be timely informed of (1) the time, place, and nature thereof; (2) the legal authority and jurisdiction under which the hearing is to

be held; and (3) *the matters of fact and law asserted.* \* \* \*" (Emphasis supplied.)

19. 5 U.S.C.A. § 1006. *Hearings; presiding officers; powers and duties; burden of proof; evidence; record as basis for decision*
\* \* \* \* \*
"(c) \* \* \* Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. \* \* \*"

20. 42 U.S.C.A. § 1975a(g) inferentially authorizes the Commission to sit in executive or closed session. Apparently pursuant to this, the Commission's Rules 2(e) and (g) were adopted. They do not guarantee, or apparently even permit, the person accused at such an executive session to be present to confront the witness or witnesses against him.

by no rules of law, or of evidence, and no restrictions except its own will, or caprice, is unknown to our constitution and laws; and such an inquisition would be destructive of the rights of the citizen and an intolerable tyranny. Let the power once be established, and there is no knowing where the practice under it would end.'

"The fear that some malefactor may go unwhipped of justice weighs as nothing against this just and strong condemnation of a practice so odious. * * *

"The philosophy that constitutional limitations and legal restraints upon official action may be brushed aside upon the plea that good, perchance, may follow, finds no countenance in the American system of government. *An investigation not based upon specified grounds is quite as objectionable as a search warrant not based upon specific statements of fact. Such an investigation, or such a search, is unlawful in its inception and cannot be made lawful by what it may bring, or by what it actually succeeds in bringing, to light. * * *"* (Emphasis supplied.)

In Morgan v. United States, 304 U.S. 1, 14, 20, 25, 58 S.Ct. 773, 775, 82 L.Ed. 1129, involving an administrative hearing, the Court said:

"The first question goes to the very foundation of the action of administrative agencies entrusted by the Congress with broad control over activities which in their detail cannot be dealt with directly by the Legislature. The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the Legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,' essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' * * *

* * * * * *

"The answer that the proceeding before the Secretary was not of an adversary character, as it was not upon complaint but was initiated as a general inquiry, is futile. It has regard to the mere form of the proceeding and ignores realities. * * *"

* * * * * *

" 'Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command. * * *' " 304 U. S. 25, 58 S.Ct. 1000.

In the most recent decision on this subject, handed down by the Supreme Court on June 29, 1959, Greene v. McElroy, 79 S.Ct. 1400, 1413, and speaking through Chief Justice Warren, the following language is found:

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, in-

tolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall enjoy the right 'to be confronted with the witnesses against him.' This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, e. g., Mattox v. United States, 156 U.S. 237, 242–244, 15 S.Ct. 337, 339–340, 39 L.Ed. 409; Kirby v. United States, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890; Motes v. United States, 178 U.S. 458, 474, 20 S.Ct. 993, 999, 44 L.Ed. 1150; In re Oliver, 333 U.S. 257, 273, 68 S. Ct. 499, 507, 92 L.Ed. 682; but also in all types of cases where administrative and regulatory action were under scrutiny. E. g., Southern R. Co. v. Commonwealth of Virginia, 290 U.S. 190, 54 S.Ct. 148, 78 L.Ed. 260; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093; Morgan v. United States, 304 U.S. 1, 19, 58 S.Ct. 773, 776, 999, 82 L.Ed. 1129; Carter v. Kubler, 320 U.S. 243, 64 S.Ct. 1, 88 L.Ed. 26; Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63. Nor, as it has been pointed out, has Congress ignored these fundamental requirements in enacting regulatory legislation. Joint Anti-fascist Refugee Committee v. McGrath, 341 U.S. 123, 168–169, 71 S.Ct. 624, 646–647, 95 L.Ed. 817 (concurring opinion).

"Professor Wigmore, commenting on the importance of cross-examination, states in his treatise, 5 Wigmore on Evidence (3d ed. 1940) § 1367:

" 'For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless· by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience.'

\*  \*  \*  \*  \*  \*

"Where administrative action has raised serious constitutional problems, the Court has assumed that Congress or the President intended to afford those affected by the action the traditional safeguards of due process. See, e. g., The Japanese Immigrant Case, Kaoru Yamataya v. Fisher, 189 U.S. 86, 101, 23 S.Ct. 611, 612, 614, 47 L.Ed. 721; Dismuke v. United States, 297 U.S. 167, 172, 56 S.Ct. 400, 80 L.Ed. 561; Ex parte Endo, 323 U.S. 283, 299–300, 65 S.Ct. 208, 89 L.Ed. 243; American Power & Light Co. v. Securities and Exchange Comm., 329 U.S. 90, 107–108, 67 S.Ct. 133, 143, 91 L. Ed. 103; Hannegan v. Esquire, Inc., 327 U.S. 146, 156, 66 S.Ct. 456, 461, 90 L.Ed. 586; Wong Yang Sung v. McGrath, 339 U.S. 33, 49, 70 S.Ct. 445, 453, 94 L.Ed. 616. Cf. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; United States v. Rumely, 345 U.S. 41, 73 S. Ct. 543, 97 L.Ed. 770. These cases reflect the Court's concern that traditional forms of fair procedure not be restricted by implication and without the most explicit action by the Nation's lawmakers, even in areas where it is possible that the Constitution presents no inhibition."

These authorities, therefore, clearly establish additional reasons why plaintiffs should be granted immediate relief.

*Fourth,* there is every reason to believe, considering that the Commission has announced its receipt of complaints from some 67 persons, that those persons will testify that plaintiffs have violated either the State or Federal laws, or both. Plaintiffs thus will be con-

demned out of the mouths of these witnesses, and plaintiffs' testimony alone, without having the right to cross-examine and thereby to test the truth of such assertions, may not be adequate to meet or overcome the charges, thus permitting plaintiffs to be stigmatized and held up, before the eyes of the nation to opprobrium and scorn. Moreover, not knowing in advance the exact nature of the charges to be made against them, some of the plaintiffs, whose official domiciles are at varying distances up to 250 miles from Shreveport, may not be able physically to obtain the presence of witnesses of their own, who might negative or disprove the claims of the complaining witnesses, especially since the Commission has announced that its hearing will last only one day.

These are further solid reasons, showing possible or probable irreparable injury to plaintiffs, which justify their being granted immediate relief.

*Fifth*, and finally, plaintiffs raise very serious questions regarding the validity—the constitutionality—of the very Act which created the Commission. We do not intimate here any opinion as to the constitutionality of the Statute, for that is a matter to be decided by the three-judge court to be convened by the Chief Judge of this Circuit. However, the seriousness of the attack must be noted, in considering whether a temporary restraining order should be issued, to stay the effectiveness of the Statute until its validity *vel non* can be determined by the three-judge court after hearing on plaintiffs' application for an interlocutory injunction. See Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972, where the Supreme Court stated, in a *per curiam* opinion:

"The application for an interlocutory injunction was submitted on ex parte affidavits which are harmonious in some particulars and contradictory in other. The affidavits, especially those for the defendant, are open to the criticism that on some points mere conclusions are given instead of primary facts. But

enough appears to make it plain that there is a real dispute over material questions of fact, which can not be satisfactorily resolved upon the present affidavits, and yet must be resolved before the constitutional validity of the amendatory statute can be determined.

\*　\*　\*　\*　\*　\*

"Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted. Love v. Atchison, Topeka & Santa Fe R. Co., 8 Cir., 185 F. 321, 331, 332."

In Crockett v. Hortman, 101 F.Supp. 111, at page 115, Judge Wright, of the Eastern District of Louisiana, dealing with the constitutionality of a State statute, said:

"Where as here the questions presented by an application for a temporary injunction are grave, and the injury to the moving parties will be certain and irreparable if the application be denied and the final decree be in their favor, while if the injunction be granted the injury to opposing parties, even if the final decree be in their favor, will be inconsiderable, the injunction should be granted. Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972.

"The determination of the grave constitutional issues presented in this case should not be decided without a trial on the merits, Polk Co. v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6, and a temporary injunction should be issued in order that the status quo may be preserved until that time."

To the same effect, see also Burton v. Matanuska Valley Lines, Inc., 9 Cir., 244 F.2d 647.

This, then, is another ground upon which plaintiffs are entitled to the immediate relief they seek.

For these reasons,[21] the applications for temporary restraining orders will be Granted.

21. Nothing that we have said, in ruling upon these cases, is intended in any way to reflect upon the Commission, its members or its staff, all of whom, we are sure, are honorable gentlemen.