## HOUSTON & NORTH TEXAS MOTOR FREIGHT LINES, Inc., et al. v. ELLIOTT.

Civ. No. 1902.

District Court, N. D. Texas, Dallas Division.

Dec. 19, 1945.

Callaway & Reed, of Dallas, Tex., for plaintiffs.

Elmer Davis, of Fort Worth, Tex., for defendant.

ATWELL, District Judge.

The original plaintiff is the Houston & North Texas Motor Freight Lines, Inc. The intervenor is the Dallas Transfer & Terminal Warehouse Company.

The complaint is that the National War Labor Board has acted upon the request of a properly constituted representative of a labor organization in which are the employees of the Houston & North Texas Motor Freight Lines requiring the local Board, the defendant, to order a strike election upon a ballot which shall require the voter to answer whether to interrupt war production by the handling of freight, or delivering freight to the intervenor, when the intervenor is a nonunion employer without any union employees. The election is imminent. Preliminary restraint, temporary injunction, and a final injunction are prayed. In these prayers, the intervenor joins.

The action is supported, and largely controlled, by Sec. 8 of the Smith-Connally Act, 50 U.S.C.A.Appendix, § 1508.

By agreement, and for the convenience of the parties, the preliminary restraint, with the giving of an appropriate bond, was granted and this hearing duly arranged upon the preliminary injunction feature.

It is unnecessary to call attention to the fact that neither the court nor the parties recognize any right to supervise labor proceedings except within the measure provided by other Acts of the Congress and within the terms of the Smith-Connally Act.

Briefly summarizing the pleadings, testimony and arguments, there are four questions for determination.

First. Since the Act is solely for the preservation of war production, it is contended that the war is over and that there is no right for such a contemplated trespass as the election notices schedule. We have an orderly method for the declaration of war. Our men are still on duty in all of the fields where they did such valiant work during the actual firing period. This may be post-bellum time. But they are still there. They have to be fed. They have to be clothed. They have to be gotten home. Some production is going to have to continue for them. We certainly have not reached the reconversion point as to them.

It is quite possible that the Congress, in providing a termination of the present conflict, in the Act, § 10, 50 U.S.C.A.Appendix § 1510, has been slightly inconsistent in its conclusion and in Section 8. Those two Sections, in that respect, may appear to be in some conflict. But the Act is to be construed together. Congress declared the war. It has provided that this particular measure shall remain in effect until six months after it is over. That six months has not expired since the shooting stopped. See Stewart v. Kahn, 11 Wall. 493, 78 U.S. 493, 20 L.Ed. 176; Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; Commercial Cable Co. v. Burleson, D.C., 255 F. 99; Kahn v. Anderson, 255 U.S. 1, 41 S. Ct. 224, 65 L.Ed. 469; Ware v. Hylton, 3 Dall. 199, 3 U.S. 199, 1 L.Ed. 568.

A recent dictum in J. V. Lincoln et al. v. Paul J. Harvey et al., filed December 14, 1945 by the Court of Civil Appeals for the Fifth District of Texas, may not be said to be an authority against this position.

Second. The court is asked to criticise the method pursued by the union employees when they voted upon the question of asking the War Labor Board at Washington to order a strike vote. Present at the meeting were other members of the union in addition to the employees of the complainant who participated in the voting by the raising of the hand. The testimony does not disclose how many did not vote, nor whether any or all of the complainant's employees voted. They were merely in the meeting and the vote was all one way. To criticise that procedure would be to substitute judicial thought for the method that the union sees fit to pursue. The very word "union" means an aggregation of those engaged in the same pursuit, acting together and in common council. That is their affair.

Third. The defendant contends that no irreparable damage is shown to be in prospect. That the most that can be said is that the Warehouse Company's testimony indicates speculative and estimated damage. Civilization invokes the power of equity to prevent threatened damage. Occasionally it may be somewhat difficult to explain, to the exact dollar, just what the contemplated, alleged wrong would cost, in the loss or destruction of property. The invoker of that power recognizing the difficulty in exact measurement and the difficulty of finding any responsible source from which a recovery could be had, after the injury, seeks relief.

The testimony discloses that the taking of strike votes, election votes, and other disturbing labor action, whatever it may be called, unsettles the customers of the one against whom the election is directed. Such customers wish their business transacted without defaults or delays. Such contests interfere with the efficiency of the employees who handle the products.

An estimate is made that the result in this case would be several thousand dollars, and that an aggregate of such damages is disclosed in monthly statements of the business when similar attempts had been made. Just what portion of those alleged damages should be allocated to the agitation before the actual strike begins, is not diagrammed completely, but it is sufficiently allocated to indicate that substantial damages will

result. Thus, there is no sufficiently responsible party from whom such damages may be recovered and the word "irreparable" seems to be fitting.

 Fourth. May the Board, conceding that there was a difference of opinion among the union employees of the Houston and North Texas Motor Freight Lines, consider that there was a dispute as to whether those employees wished to handle, or wished to refuse to handle business from and with the Warehouse Company whose employees were nonunion?

The definitions which we have of labor disputes, even down to and including the recent case by the Supreme Court in May Department Stores v. National Labor Relations Board, 66 S.Ct. 203, cannot be taken hold of with that certainty which we like to have and enable us to say, this is a dispute. We must continue to pioneer somewhat. To be reasonable. We must assume that the very fact that the union company which had been handling all the time, business for and with a nonunion company, had raised a question that the union officials considered sufficiently provocative to ask for an expression by the union and to merit a complaint to the Board.

The intervenor claims, as does the plaintiff, that the real desire of the union representative is to organize the employees of the nonunion concern and that this method was taken in order to facilitate that move. That such an activity was unconscionable and should be forbidden.

There are many things upon both sides of this distressing controversy in the nation which disturb the thoughtful. But if the union member is to be treated as a thinking human being, he certainly must be conceded the right to express his view without court supervision. The simple question is whether the members of the union will or will not accept freight from another agency, which is the customer of their present employer, when that customer has seen fit to go forward with employees who do not care to belong to the union. Those employees have as much right not to belong as the other employees have to belong. Neither has the right to trespass upon the rights of the others, nor the rights of their respective employers. We know that is good American doctrine.

To hold otherwise would be to brand the laborer, the employee, as insufficiently discriminating to figure out for himself what is right. This court cannot go that far. It has confidence in them. That confidence belongs and is properly placed in both the union and the nonunion worker.

Temporary injunction is refused to both the plaintiff and the intervenor.