**THERMOID CO. v. UNITED RUBBER WORKERS OF AMERICA, LOCAL NO. 83, C.I.O., et al.**

Civil Action No. 7160.

District Court, D. New Jersey.

Feb. 13, 1947.

Ellis L. Pierson, of Trenton, N. J., for plaintiff.

Rothbard, Harris & Oxfeld and Samuel L. Rothbard, all of Newark, N. J. (G. L. Patterson, of Washington, D. C., of counsel), for defendants.

John F. Sonnett, Asst. Atty. Gen., and Edgar H. Rossbach, U. S. Atty., of Newark, N. J. (J. Francis Hayden, Sp. Asst. to Atty. Gen., and Harry I. Rand, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

FORMAN, District Judge.

This action was brought to recover damages which plaintiff claims to have suffered by reason of the defendants' failure to comply with the provisions of Section 8 of the War Labor Disputes Act, 50 U.S.C.A. Appendix, § 1508. The defendants are the United Rubber Workers of America, C.I.O. (the "International"); Local No. 83 of that organization (the "Local"); Herbert Bennett and O. H. Bosley, agents of the "International"; John A. Jones and Joseph Bystrycki, local union officers and employees of plaintiff (the "local union officers"); and Helen Papiez, Jenny Brusda, Helen Jaworski, and Julia Crush, local union members and employees of plaintiff (the "defendant operatives").

The allegations of the complaint are, in summary as follows: The plaintiff is a Delaware corporation with a plant near Trenton, New Jersey where it manufactures articles which are used in the production of aircraft facilities, machinery, and tools under war contracts. On January 12, 1945, it entered into a collective bargaining agreement with the "International" and the "Local" representing its employees in the Fan Belt Department. This contract, in part, prohibited lockouts, strikes, stoppages, sympathy strikes, or slowdowns. On August 20, 1945, while the agreement was in effect, the plaintiff cancelled certain piece-work values for work on which the "defendant operatives" were engaged and undertook new time studies and the calculation of new piece-work values. The new rates were announced on September 5, 1945 and thereupon a written grievance was filed with the plaintiff, on behalf of the "defendant operatives," complaining of the new piece-work rates. On September 11, 1945, while that matter was under consideration, the "defendant operatives" "walked away from the plant and did not return to work." On September 13, 1945, the entire personnel of the collective bargaining unit was on strike. Picket lines were formed and constantly maintained until October 25, 1945, resulting in a complete cessation of production in the plant during that period. Plaintiff claims that under the definition of the Act it is a war contractor and all the defendants, other than the "defendant operatives," are individually and collectively representatives of the employees.

The complaint states that defendants "willfully and knowingly wholly disregarded their duties * * * and with the intent to injure and damage the plaintiff, violated their duties under the War Labor Disputes Act"—the "International," the "Local," the "International's" agents, and the "local union officers"—by failing and refusing to give notice of the labor dispute, as required by Section 8(a) (1) of the Act; and the defendants who were employees of the plaintiff, by failing and refusing to continue at work. The defendants are further charged with the establishment of the picket line and the consequent interference with access to the plaintiff's plant. The injuries allegedly suffered by the plaintiff by reason of these acts are generally described, and the complaint then prays for

judgment against the defendants for $175,-000.

The defendants have moved to dismiss the complaint on various grounds:

1. On behalf of all the defendants, it is urged that the complaint fails to state a claim for relief, for the following reasons:

a. Section 8 of the War Labor Disputes Act is applicable only in wartime and only with respect to labor disputes which threaten seriously to interrupt war production. The matters set forth in the complaint are not alleged to have occurred in wartime, and neither interrupted nor seriously threatened to interrupt war production.

b. Section 8 is unconstitutional and in contravention of the Fifth and Thirteenth Amendments to the Constitution, and too vague, uncertain, and indefinite.

c. The complaint demonstrates that the plaintiff provoked the stoppage of work by its own actions.

d. There is no sufficient allegation of combination or conspiracy among the defendants.

2. On behalf of the non-employee defendants, it is urged that the complaint fails to state a claim for relief because no liability is imposed on them by Section 8, and no damage could have resulted from their failure to perform the obligations, if any, imposed on them by that section.

3. On behalf of the "International," dismissal is urged for the following reasons:

a. There are not sufficient allegations that it had knowledge of the matters alleged, that it sanctioned or authorized the stoppage, or that it participated in the stoppage.

b. The "International" was not a representative of the plaintiff's employees, within the meaning of Section 8.

c. There is improper venue as to the "International."

The defendants also request that the allegations in the complaint that each defendant was under a duty to refrain from causing or permitting a cessation of production be stricken, and that in the event any of the motions to dismiss are denied, a more definite statement or bill of particulars be furnished them.

Upon certification to the Attorney General that a question as to constitutionality of an act of Congress was drawn in question by the motion to dismiss, the United States requested leave to intervene, pursuant to 28 U.S.C.A. § 401. Its motion was granted, and its pleading in intervention accepted and filed.

The complaint is framed to allege a cause of action for damages under the War Labor Disputes Act, 50 U.S.C.A. Appendix, § 1501 et seq., and the following provisions of that Act are controlling:

"§ 1508. Notice of threated interruptions in war production; continuance of operation for thirty days after notice; balloting by employees on disputed issues; plants excepted; penalty for violation

"(a) In order that the President may be apprised of labor disputes which threaten seriously to interrupt war production, and in order that employees may have an opportunity to express themselves, free from restraint or coercion, as to whether they will permit such interruptions in wartime—

"(1) The representatives of the employees of a war contractor, shall give to the Secretary of Labor, the National War Labor Board, and the National Labor Relations Board, notice of any such labor dispute involving such contractor and employees, together with a statement of the issues giving rise thereto.

"(2) For not less than thirty days after any notice under paragraph (1) is given, the contractor and his employees shall continue production under all the conditions which prevailed when such dispute arose, except as they may be modified by mutual agreement or by decision of the National War Labor Board.

"(3) On the thirtieth day after notice under paragraph (1) is given by the representative of the employees, unless such dispute has been settled, the National Labor Relations Board shall forthwith take a secret ballot of the employees * * * with respect to which the dispute is applicable on the question whether they will

permit any such interruption of war production.

\* \* \* \* \* \*

"(c) Any person who is under a duty to perform any act required under subsection (a) and who willfully fails or refuses to perform such act shall be liable for damages resulting from such failure or refusal to any person injured thereby and to the United States if so injured."

"§ 1510. Termination of Act

"\* \* \* the provisions of this Act \* \* \* shall cease to be effective at the end of six months following the termination of hostilities in the present war, as proclaimed by the President, or upon the date (prior to the date of such proclamation) of the passage of a concurrent resolution of the two Houses of Congress stating that such provisions and amendments shall cease to be effective."

The acts complained of occurred after informal surrender of the Japanese on August 14, 1945 and V-J Day on September 2, 1945, and plaintiff's argument regarding the applicability of the War Labor Disputes Act is based upon a literal application of the Act's termination provisions. Defendants rely upon developments in Congress and Executive Orders of the President since V-J Day, and contend that upon surrender the Act became ineffective.

Defendants call attention to an excerpt from the Congressional Committee Report No. 1288 dated November 26, 1945 accompanying H.R. 4805, First Deficiency Appropriation Bill, 1946, 79th Congress, First Session, under the heading "National Labor Relations Board." A more comprehensive review of the relevant portions of this report reveals the following:

"\* \* \* The end of the war and the disappearance of the War Labor Board and other war labor agencies have added largely to the Board's responsibilities."

\* \* \* \* \* \*

"In connection with the work load of this agency and the growing backlog of cases, the committee finds that much of the difficulty flows from the War Labor Disputes Act, which has served its war purpose, and yet the National Labor Relations Board continues to have notices of strike votes certified to it by the Secretary of Labor for holding elections. Since such act requires that ballots be counted within 30 days after the signing of a notice, the regular work of the Board, upon which there is no time limit as to performance, has to suffer. The war is over insofar as the employment of labor in war production or in the war effort is concerned, and the committee, therefore, can find no justification for the National Labor Relations Board being called upon to expend public funds or being held up in its regular work on account of this outdated activity. For that reason it has attached to the appropriation for salaries, National Labor Relations Board, a proviso reading as follows:

"Provided, That no part of the funds appropriated in title IV, Labor-Federal Security Appropriations Act, 1946 [59 Stat. 377], or any other funds appropriated to the National Labor Relations Board for the fiscal year 1946 hereafter shall be used, except for the discharge of obligations incurred up to and including the date of approval of this Act, by the National Labor Relations Board in any way in connection with the performance of the duties imposed upon it by the War Labor Disputes Act (50 U.S.C.App. 1501-11) \* \* \* and the National Labor Relations Board shall return to the Treasury all funds appropriated to it under title IV of the National Labor Relations Board Appropriations Act, 1946 [59 Stat. 377]; for the performance of duties imposed upon it by the War Labor Disputes Act, less all sums actually expended and obligations actually incurred in the performance of its duties under the War Labor Disputes Act up to and including the date of approval of this Act.

"Without this proviso, the committee is advised that the cost of conducting strike ballots during the second half of the current fiscal year may be as much as $2,400,-000, no part of which has been appropriated and without this proviso, the regular work of the National Labor Relations Board may be expected to continue in arrears."

The proviso recommended in the Report was substantially enacted as quoted above

in the First Deficiency Appropriation Act, 1946, Chapter 589—Public Law 269 H.R. 4805, as approved December 28, 1945, 59 Stat. 632.

On December 31, 1945, the President, by Executive Order No. 9672, 50 U.S.C.A. Appendix, § 964 note, substituted the National Wage Stabilization Board for the National War Labor Board and directed it to assume all the functions and responsibilities of the National War Labor Board relating to the disposition of dispute cases for designated purposes and specifically included the receipt of notices under Section 1508, supra, of the War Labor Disputes Act.[1]

In fact it was not until July 16, 1946 that the functions of the National Labor Relations Board under Section 8 of the War Labor Disputes Act with respect to taking secret ballots of employees on the question of an interruption of war production were abolished by the promulgation of Reorganization Plan No. 3 of 1946, Part VII, 5 U.S.C.A. § 133y—16 note.[2]

On December 31, 1946, the President proclaimed the cessation of hostilities of World War II, effective as of twelve o'clock noon of that day. Proclamation 2714, 50 U.S.C.A. Appendix, § 601 note; 12 F.R. 1.

None of the contingencies specified in the War Labor Disputes Act, 50 U.S.C.A. Appendix, § 1510, the happening of which would automatically terminate its provisions, occurred prior to the accrual of this cause of action.

The Committee Report No. 1288 appears to be bereft of any significant value to the defendants. Both it and the Deficiency Appropriations Act, 1946, very clearly indicate that there was no diminution in the obligations imposed upon the National La-bor Relations Board by the War Labor Disputes Act until December 28, 1946. Furthermore, on December 31, 1945 the President's Executive Order 9672, supra, provided that the National Wage Stabilization Board should receive the notices formerly received by the National War Labor Board. This is the notice that plaintiff alleges was not made herein and upon which this cause of action is based. We are unable to make any implications from the legislative and executive developments which would even suggest a termination of the Act in question prior to the proclamation made on December 31, 1946. It further appears that the Act will remain in effect for six months following the proclamation. 50 U.S.C.A. Appendix, § 1510.

In the case of Houston & North Texas Motor Freight Lines v. Elliott, D.C. 1945, 63 F.Supp. 577, the court made these comments in connection with the portion of the Act now under consideration:

"First. Since the Act is solely for the preservation of war production, it is contended that the war is over and that there is no right for such a contemplated trespass as the election notices schedule. We have an orderly method for the declaration of war. Our men are still on duty in all of the fields where they did such valiant work during the actual firing period. This may be post-bellum time. But they are still there. They have to be fed. They have to be clothed. They have to be gotten home. Some production is going to have to continue for them. We certainly have not reached the reconversion point as to them.

\*       \*       \*       \*       \*

"\* \* \* It [Congress] has provided that this particular measure shall remain in effect until six months after it is over.

---

[1] "\* \* \* The Board shall have all the powers, functions, and responsibilities of the National War Labor Board relating to the disposition of dispute cases for the following purposes only:
\* \* \*
"(c) The disposition of applications under Section 5 of the War Labor Disputes Act and the receipt of notices under Section 8 of that Act." 11 F.R. 221.

[2] "Part VII. National Labor Relations Board
"Section 701. Strike ballots under War Labor Disputes Act. The functions of the National Labor Relations Board under section 8 of the War Labor Disputes Act (57 Stat. 162 [163], 167, ch. 144) with respect to taking secret ballots of employees on the question of an interruption of war production are hereby abolished." 11 F.R. 7877.

That six months has not expired since the shooting stopped." 63 F.Supp. 577, 578.

We conclude that the pertinent provisions of the War Labor Disputes Act were in effect at the time this cause of action is alleged to have arisen.

■ Defendant, "International" objects to the venue laid herein on the ground that it is an unincorporated association with its principal office in Akron, Ohio. It was established in the case of United Mine Workers et al. v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762 that an unincorporated union was suable as an entity for the purpose of enforcing against it a federal substantive right although the state court of the forum had earlier refused to recognize that it was suable. In the case of Sutherland et al. v. United States, 8 Cir., 74 F.2d 89, suit was brought under the National Industrial Recovery Act, 48 Stat. 195, in the District of Nebraska against a partnership doing business in Nebraska, but whose partners resided in Missouri. Defendants moved to dismiss. The court relied upon that part of § 51 of the Judicial Code, 28 U.S.C.A. § 112, providing as follows:

" * * * no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant;"

The court observed that this provision does not limit the jurisdiction of the District Courts but only confers a personal privilege on the defendant. From authorities cited the court deduced that [74 F.2d 93] "in the case of a person, either natural or artificial, where federal jurisdiction is not based upon diversity of citizenship and does not fall within other exceptions contained in the venue statute, a suit is maintainable without consent of the defendant in only one district, and that district is the one of which he or it is an inhabitant." It concluded that the suit could only be brought in Missouri.

Since the decision in the case of United Mine Workers v. Coronado Coal Co., supra, Rule 17(b) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, has codified its holding and has added that an unincorporated association may sue when federal substantive rights are involved. We are not concerned, however, with capacity to be sued; there is no dispute with regard thereto; rather the problem is only one of venue and defendants contend that the case of Sutherland et al. v. United States, supra, should be extended to include unincorporated associations.

Plaintiff relies on the case of Sperry Products, Inc., v. Association of American R. R., 2 Cir., 132 F.2d 408, 145 A.L.R. 694, wherein suit for patent infringement was brought in the Southern District of New York against defendant and others. One of the defendants was an unincorporated association whose members were two hundred or more railroads whose common interest it was organized to supervise and protect. It did not appear where its principal activities were, but its charter designated Washington, D. C., as the principal office. Suit was brought on the theory that the association was an inhabitant of all places of which any of its members was an inhabitant. Since this was a suit under the patent laws venue was broader than exists in the instant case under Section 51 of the Judicial Code for venue in patent actions must be laid "in the district of which the defendant is an inhabitant" or "in any district in which the defendant * * * shall have committed acts of infringement and have a regular and established place of business," § 48 Judicial Code, 28 U.S.C.A. § 109. The court held that the association was *present* wherever any substantial part of its activities were continuously carried on, and that the Southern District of New York was one of such places. Reference was made to § 48 of the Judicial Code and "inhabitancy" was construed to mean "principal" place of business for the term "inhabitancy" in § 48 is contrasted with "regular and established place of business." The court stated that suit should be brought against the association either at its principal place of business or at any of its regular and established places of business where it

may have infringed. The court was unable to decide from the evidence if the Southern District of New York were the principal place of business of the association and the trial court was directed to try this issue if the plaintiff wished to proceed against the association. A concurring opinion recognized that the association might have several principal places of doing business, and concluded that the association was an inhabitant of, and could be sued in, the Southern District of New York, if that were one of its principal places of doing business.

The pertinent part of the above decision is the court's recognition that an unincorporated association may be sued in a district other than where it maintains its principal office. Therein, the pleadings disclosed that the principal office was located in Washington, D. C. Here, the "International" contends that it can be sued only in the District of Ohio where it maintains its principal office at Akron. The statute involved here requires that the association must be sued in the district whereof it is an inhabitant. In the case discussed the statute contained terms which the court held were in contrast; namely, "inhabitant," as opposed to "regular and established place of business," and for that reason the court felt that "inhabitant" should mean a more permanent attachment.

The pleadings in this case allege that the "International" includes all the local unions throughout the nation and state, that the defendant Herbert Bennett, the "International" representative and agent, resides in New Jersey and supervises for "International" all relations of the defendant "Local" with the plaintiff and also the activities of other Locals in the Trenton area. It is alleged that the defendant Bosley resides in New Jersey and is the District Representative and agent of "International" and that he supervises for "International" the activities of other Locals in the State of New Jersey and the relationship between plaintiff and "International".

■ These allegations that the "International" is present in this district through its component parts, its own representatives, and that its business through them

is conducted in this district, must be viewed as undenied on a consideration of its motion. Berger v. Clouser, D.C., 36 F.Supp. 168, 170; United States v. Brownley, D.C., 34 F.Supp. 923, 924. That the "International" is an inhabitant of the district has been adequately pleaded and venue has been properly laid.

■ The government contends that the constitutional objections are not ripe for determination at this time, and should be deferred until after comprehensive consideration so that the validity of the Act can be weighed against the background of the social, economic and military factors which inspired its enactment. The mechanics of trial upon issue other than constitutionality are so simple and the probabilities and possibilities of terminal results are such as to render it quite unnecessary to approach the constitutional problems raised. Hence, we deem the application of the government entirely reasonable and its motion will be granted. Borden's Farm Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281; Polk Co. v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6.

■ Defendants contend they are not in fault because plaintiff provoked the stoppage of work when the rates were changed, and that plaintiff failed to comply with § 1508(a) (2) of the Act providing

"For not less than thirty days *after any notice* under paragraph (1) is given, the contractor and his employees shall continue production under all the conditions which prevailed when such dispute arose." [Italics supplied.]

Defendants say plaintiff was required to continue production under all the conditions which prevailed before the rates were changed. This, however, overlooks the provision of the statute that requires continuous production under previous conditions *after notice is given* and that in this case it is alleged that *no notice was given*.

Defendants also say under this argument that plaintiff had knowledge of the dispute since it provoked the stoppage, and that it in effect is attempting to penalize those who had no knowledge. Other objections dealing with lack of knowledge on the part of non-employee defendants, and the

absence of a duty to give notice were made. We think the complaint is sufficient in this respect for it alleges the non-employee defendants are representatives and that they wilfully, failed to comply with the Act. Whether or not they were representatives and wilfully failed to comply with the Act are issues which must be settled by trial and not on motion to strike or dismiss.

It is moved as to "all or some of the defendants" to strike out so much of paragraph 16 of the complaint as reads: "(and under said act each defendant herein was under a duty to refrain from urging, inducing, causing or permitting a cessation of production in the plant of the plaintiff because of a labor dispute until notice had been given and thirty days had elapsed as aforesaid)" for the reason that the portion of the statute under which the action is brought does not impose any such duty on any one or more of the defendants. § 1508(a) (2), supra, requires the contractor and employees to continue production for not less than thirty days after notice is given. The quoted language appears in parenthesis in paragraph 16 of plaintiff's complaint and we cannot find that the Act itself imposes the duty alleged in that passage, and, therefore, it will be stricken.

In view of our determination that the Act in question was in effect at the time this cause of action accrued, we believe that defendants' objection that no cause of action was stated has been overcome. Plaintiff alleges it is a war contractor within the meaning of the Act producing materials under war contracts, a cessation of production, a wilful failure to give the required notice and damages. These allegations are sufficient.

An order should be taken striking out that part of paragraph 16 of the complaint in parenthesis, but denying the motions to dismiss pursuant to the discussion in this opinion.

The alternative motion for a more particular statement of damages to enable defendants to prepare for trial was not argued and will be deferred until a showing is made that particularity is required.