**DAYTONA BEACH GENERAL HOSPITAL, INC., a Florida Corporation, Plaintiff,**

v.

**Caspar W. WEINBERGER, etc., et al., Defendants.**

**No. 74–55–Orl–Civ–Y.**

United States District Court, M. D. Florida, Orlando Division.

Aug. 19, 1977.

William M. Barr, Daytona Beach, Fla., for plaintiff.

Mark L. Horwitz, Asst. U. S. Atty., Orlando, Fla., for defendants.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This action arises from the recoupment by the Department of Health, Education and Welfare (HEW) of a sum in excess of $400,000.00 from the Daytona Beach General Hospital (The Hospital). This amount was paid to the Hospital for allegedly medically unnecessary services and hospital stays provided to beneficiaries under the Medicare Hospital Insurance System from 1966–1969. The Hospital is seeking an accounting and refund of all funds so recouped.

This cause was submitted to the Court on cross-motions for summary judgment filed by the plaintiff and the defendants. The plaintiff's motion for summary judgment was based on two alternative theories: (1) that the defendants had no right to recoup from the plaintiff, a provider of services under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C., Section 1395, et seq., monies paid prior to January 1, 1972 as reimbursement for services allegedly not covered by the Act as based on the defendants' subsequent determination of "overutilization" by the plaintiff; and (2) alternatively, even assuming defendants were legally entitled to recoup, the use of a sampling procedure by defendants to ascertain the amount of the purported overutilization was in contravention of the due process clause of the Fifth Amendment to the United States Constitution.

There having been no dispute as to any genuine issue of material fact, except as to the exact sum allegedly unlawfully recouped by defendants, and the Court having read and considered the pleadings and other documents filed in this action, the affidavits

in support and opposition to the motion, and further, having heard the arguments of counsel at the hearing held before the Court on November 4, 1974, the Court previously made the following rulings:

(1) Defendants' motion for summary judgment was denied;

(2) Partial summary judgment for the plaintiff was granted on the theory that the use of the sampling procedure to determine the amount of the alleged overutilization constituted a denial of due process;

(3) Plaintiff's motion for summary judgment on the theory that the defendants had no right to recoup the monies received by plaintiff prior to the 1972 amendments to the Medicare Act was taken under advisement; and the parties were directed to submit their briefs to the Court on the issue of whether the Tucker Act, 28 United States Code, Section 1346 and Section 1491 (providing jurisdiction in the Court of Claims for actions seeking the recovery of money damages from the United States) precluded this Court from ordering the defendants to refund amounts previously recouped for alleged overutilization; and

(4) Directing the parties to report to the Court within twenty (20) days whether an agreement had been reached upon an exact figure as to the amount of money recouped by the defendants for the years 1966–1969.

The parties subsequently filed with the Court a stipulation concerning the recoupment figure, stating that the amount recouped prior to 1971, if the amounts recouped from the Extended Care Facility were included, totals $492,255.00; if said amounts are excluded, the total is $416,-034.00.

A further hearing on the first theory of plaintiff's motion for summary judgment (concerning the Secretary's right to recoup) was held on March 28, 1975. As it was represented to the Court that the Fifth Circuit Court of Appeals had heard arguments in the case of *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 376 F.Supp. 1099 (S.D.Fla.1975), a case involv-

ing a similar factual situation, and as it appeared that the disposition of that case might have direct bearing on the ultimate disposition of this case, the Court continued the final hearing in this cause pending a decision in the *Mount Sinai* case.

Subsequent to the decision by the Fifth Circuit in the *Mount Sinai* case,[1] the Court by letter dated September 9, 1975, requested the parties to submit briefs on the question of whether, in view of the Tucker Act and the decision in *Mount Sinai* that recoupment was within the authority of the Secretary of HEW, this Court has jurisdiction of the case.

Plaintiff filed a motion for clarification of the Court's position on the jurisdictional issue as to whether the Court was indicating the possibility that it did not have jurisdiction over only the *Mount Sinai* theory of plaintiff's case, or whether the Court was of the opinion that it might not have jurisdiction over either of plaintiff's theories. Alternatively, the plaintiff filed a motion to transfer the case to the Court of Claims if this Court finds that it lacks jurisdiction of the controversy.

In response to the plaintiff's motion, the Court requested the parties to submit additional memoranda pertaining to whether the Court could transfer the case to the Court of Claims in view of the presence of a private corporation, Blue Cross of Florida, Inc. as a defendant along with the United States Government.

The parties having submitted their briefs on the issues of whether this Court has jurisdiction over the matters raised in the complaint in this action or whether jurisdiction is proper only in the Court of Claims, and the Court having read and carefully considered the same, the Court hereby renders its determination as to the disposition of this case.

## I. BACKGROUND:

The Fifth Circuit Court of Appeals in *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (1975), had

1. *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (5th Cir. 1975).

before it a case factually similar to the instant action, both cases involving an action by the Secretary of Health, Education and Welfare to recoup large sums of money which were paid to a hospital for allegedly medically unnecessary services and hospital stays provided to beneficiaries under the Medicare Hospital Insurance Program prior to 1972. In its opinion in *Mount Sinai*, the Fifth Circuit set forth the history and background of the Medicare Program as a prelude to its determination of the issues involved in that case. Because of its relevance, that portion of the Fifth Circuit's opinion [2] is reproduced in its entirety as follows, with footnotes omitted:

### "I. The Medicare System

Federal Health Insurance for the Aged, popularly known as Medicare, was enacted by Congress in Title 1 of the Social Security Amendments of 1965, P.L. 89–97, Sections 101–122, 79 Stat. 286, July 30, 1965, as Subchapter XVIII of the Social Security Act, codified as 42 U.S.C. Sections 1395–1395*ll* (1970), as amended 42 U.S.C. Sections 1395–1395pp (Supp. III). The system contains two substantively distinct parts, one providing insurance for hospital and related post-hospital services, known as Part A, 42 U.S.C., Sections 1395c–1395i–2 (Supp. III), the other providing insurance for supplementary medical services, primarily physicians' services, known as Part B, 42 U.S.C., Sections 1395j–1395w (Supp. III). This case concerns Part A.

Under Part A, the hospital insurance program, persons aged 65 and older, Section 1395c, receive essential hospital services, Section 1395d, paid for from a trust fund financed by wage taxes on employees and self-employers, 26 U.S.C., Sections 1401(b), 3101(b) and 3111(b) (1970), the Federal Hospital Insurance Trust Fund, Section 1395i. The hospital services are paid for directly by the government. However, only those hospitals and other institutions that qualify as "providers of services" under Section 1395x(u), incorporating Section 1395x(e), (j), and (*o*), and that are accredited under Section 1395bb, are eligible to receive payments under the program, Section 1395f(a). They can do so only after entering into agreements with the Secretary of HEW meeting the requirements of Section 1395cc(a), Section 1395f(a). They must agree, among other things, not to charge a Medicare beneficiary for any services received under the program, Section 1395cc(a)(1)(A), other than for co-insurance and deductibles provided for in Section 1395cc(a)(2)(A), but instead to look only to the government for compensation. Payment for services is based on the reasonable cost of such services, Section 1395f(b), as determined pursuant to Section 1395x(v) and the appropriate regulations, 20 C.F.R., Section 405.401, *et seq.*

Day-by-day administration of the Medicare program is handled by "fiscal intermediaries." These are private, nongovernment entities, frequently health and accident insurance companies (including "Blue Cross" organizations) nominated by a provider or group of providers. They enter into contracts with HEW and serve as HEW's agents for many functions, such as hospital audits, information dissemination, and fund disbursement, Section 1395h. Defendant Blue Cross of Florida, Inc. is the fiscal intermediary between *Mount Sinai* and HEW and also agent for HEW. . . ."

Providing services to a beneficiary raises two important and distinct issues: (1) whether the services provided are covered by Section 1395d and not excluded by Section 1395y; and (2) whether the amount paid for the services is the "reasonable cost" under Section 1395x(v). Each issue is resolved under distinct procedures.

.     .     .     .     .

---

2. *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 334–35 (5th Cir. 1975) (footnotes omitted).

### a. Coverage determinations

The issues in coverage determinations are defined by Sections 1395d and 1395y. Section 1395d defines the benefits covered by Medicare: in-patient hospital services, post-hospital extended care services and post-hospital home health services with annual day or visit limits for each, Section 1395d(a)(1)–(3). Section 1395y defines exclusions from the general definition of scope of benefits in Section 1395d. The most important as a practical matter are the exclusions from coverage of services "which are not reasonable and necessary for the diagnosis or treatment of illness or injury . . . .", Section 1395y(a)(1), or which are for "custodial care", Section 1395y(a)(9). The instant case involves services found by HEW not to be covered because not medically necessary under Section 1395(a)(1).

The parties primarily concerned with coverage determinations are HEW and the beneficiary. In theory the provider's interest is slight because the coverage determination merely has the effect of resolving who shall pay it for the services, Medicare or the individual. The administrative procedures for making the coverage determination reflect these theoretical interests, for only the beneficiary has a right to hearing and judicial review under the statute, Sections 1395ff(b)(1)(C) and (b)(2), and the regulations, 20 C.F.R. Sections 405.701 et seq., see particularly Sections 405.702, –.710–.720, –.730 and –.750. As a practical matter, however, the provider is greatly concerned about who its debtor is. The alternative debtors are the government and a private individual who may be hard to find, harder to collect from, and impossible to placate if collection from him is necessary.

### II. THE FACTS

The facts as admitted and stipulated to by the parties in the pretrial stipulation are that plaintiff, Daytona Beach General Hospital, Inc., operated a general hospital in Volusia County, Florida, and from February 27, 1968 to October 1, 1969 also operated an Extended Care Facility. On May 2, 1966, the hospital entered into an agreement with the Secretary of HEW to become a "provider of services" under the Medicare Program, Section 1395x(u). The hospital was prohibited from charging any patient directly for items or services provided under the Medicare Act, Section 1395cc(a)(1), but, the Hospital became entitled to reimbursement from the Secretary or his agent, a designated fiscal intermediary, for its reasonable costs in providing covered Medicare services. The hospital designated Blue Cross Association (BCA) and Blue Cross of Florida, Inc. (BC–Fla) as its fiscal intermediaries under the Act, Section 1395h(a).[3]

On June 20, 1969, as a result of a preliminary audit of some Medicare case files, plaintiff's fiscal intermediary defendant BC–Fla, suspended Medicare payments to plaintiff's hospital and extended care facility on the basis of alleged "overutilization" for the years 1966–1969. The defendants asserted that the hospital had rendered excessive or medically unnecessary services excluded from coverage under Section 1395y(a)(1) of the Medicare Act.

Thereafter, on August 1, 1969, Blue Cross again commenced payments to the hospital under the Medicare Act, but provided, however, that a certain proportion of the Medicare reimbursements to which plaintiff became entitled would be withheld until the alleged overpayments were recouped. The

---

**3.** Blue Cross Association (BCA), a non-profit organization having been nominated by a group of providers of services which included Daytona Beach General Hospital, entered into an agreement with the Social Security Administration, pursuant to the provisions of Section 1816 of the Social Security Act, 42 United States Code, Section 1395h, to perform for the Secretary designated functions in the administration of Part A of the Medicare Program.

BCA delegated its duties as fiscal intermediary for Daytona Beach General Hospital to Blue Cross of Florida, Inc., one of its local Plan organizations under subcontract with the BCA. By reason of such subcontract, Blue Cross of Florida became the fiscal intermediary for Daytona Beach General Hospital and through such intermediary the Secretary made payments under the Medicare Program to the provider.

entire sum claimed to have been owed has now been recouped either by virtue of Blue Cross' withholding of amounts due on claims in subsequent years or by cash payments from the plaintiff to BC–Fla.

The defendants BC–Fla and the Secretary conducted fiscal reviews and audits of the plaintiff's cost reports, medical records and other records pertaining to the Medicare program, for the fiscal years ending June 30, 1967 through June 30, 1970. To determine the amount of the alleged overutilization, a sampling procedure was used whereby less than 10% of the some 3500 Medicare cases during the years in question were selected for review by the defendants.

The review of the selected case files was conducted by a utilization review committee composed of five doctors appointed solely by defendant BC–Fla, the chairman of which committee was a full-time salaried employee of BC–Fla. Examination of the selected cases was without the participation of the plaintiff and without consultation with the attending physicians. Meetings were subsequently held on five different occasions in 1969 and 1970 between personnel of the plaintiff and defendant at which time the alleged overutilization and the associated fiscal problems engendered by withholding funds were discussed. Only at the final meeting, in November 1970, was the topic of the sampling procedure discussed.

The statistical results of the committee's determinations of medically unnecessary hospital stays and ancillary services drawn from this sample were then applied to all Medicare patients cared for by plaintiff during the relevant period, producing a calculated (not actual) overpayment figure in excess of $400,000.00.[4]

The plaintiff seeks a refund of the amount recouped contending that the Secretary had no authority to recoup monies paid to a provider of services on matters of

coverage prior to the 1972 amendment to the Medicare Act,[5] and further, assuming the Secretary has such authority, the plaintiff was denied due process by the use of the sampling procedures and by the failure to be provided a proper hearing prior to the determination of overutilization and the lack of adequate appeals procedure subsequent to such determination.

■ As previously noted, the Fifth Circuit's decision in *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (5th Cir. 1975), foreclosed plaintiff's first argument by conclusively establishing the Secretary's right to recoup from providers funds paid for medically unnecessary services in the implementation of the Medicare Hospital Insurance Program.

But a determination that the Secretary may recoup still leaves for decision the issue of judicial review of any such recoupment.

### III.  JURISDICTION

The question of the availability of judicial review of the Secretary's determination to recoup overpayments made to a provider of services for services not covered by the Medicare Act has not been conclusively answered. The plaintiff asserts jurisdiction exists in this Court under either the general federal question jurisdiction granted in 28 U.S.C., Section 1331, or under the Administrative Procedure Act, 5 U.S.C. Sections 701 *et seq*, to review the Secretary's actions in recouping the alleged overpayments. The defendants in their final brief assert that this Court has only a limited jurisdiction to review the constitutionality of the procedures used by the Secretary in determining the amount to be recouped. Both parties assert that jurisdiction is improper in the Court of Claims.

42 U.S.C. Section 405(h) of the Social Security Act provides:

---

**4.** See stipulated figures of amounts recouped, *infra* Page 893.

**5.** The 1972 amendments established that recoupment of a provider for payments for non-covered services is assumed. The amendments are contained in Section 281 of the Social Security Amendments of 1972, Act of October 30, 1972, P.L. 92–603, 86 Stat. 1454, 42 U.S.C., Sections 1395gg(b), (c), 1395cc(a)(1)(B).

"The findings and decisions of the Secretary (of HEW) after a hearing shall be binding upon all individuals who were parties to such hearing. No finding of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 (now Section 1331) of Title 28 to recover on any claim arising under this subchapter." (emphasis added).

The provision for judicial review is embodied in 42 U.S.C. Section 405(g) which authorizes a civil action to be commenced in the district court within 60 days after the mailing of HEW's notice of decision. The difficulty arises because while the Medicare Act expressly incorporates section 405(h), it does not incorporate section 405(g) as a basis for judicial review with respect to disputes over provider reimbursement. What then is the basis, if any, for this district court having jurisdiction?

Initially in this action, the government challenged this Court's subject matter jurisdiction by a motion to dismiss, which was denied by the Court on the basis of the decisions in *Aquavella v. Richardson*, 437 F.2d 397 (2nd Cir. 1971) and *Coral Gables Convalescent Home, Inc. v. Richardson*, 340 F.Supp. 646 (S.D.Fla.1972), on the ground that the Administrative Procedure Act, 5 U.S.C. Sections 701, *et seq* provides a means of subject matter jurisdiction for the review of agency action where a statute does not specifically bar such review. In its final brief, the government states that it does not renew its motion to dismiss at that time, on the basis of Fifth Circuit cases finding similar subject matter jurisdiction on the basis of the APA [6], but argues that, based on a recent Eighth Circuit case, *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283 (8th Cir. 1976), the scope of such review is limited to a narrow judicial inquiry into the procedural adequacy of the challenged actions.

Since the filing of the briefs, the Supreme Court has decided *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (Feb. 23, 1977), which holds—contrary to *Ortego v. Weinberger, supra,*—"that the better view is that the APA is not to be interpreted as an implied grant of subject matter jurisdiction to review agency actions." 430 U.S. at 105, 97 S.Ct. at 984, 51 L.Ed.2d at 199.

Jurisdiction under 28 U.S.C., Section 1331 was barred by *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

The *Mount Sinai* case, *supra,* would seem to imply jurisdiction in this court because the Fifth Circuit Court of Appeals decided that case on its merits. However, an important distinction exists between that case and the one at bar; there injunctive relief from future action was sought while here plaintiff seeks to recover money from the government.

■ This Court concludes that if any judicial relief is available in the way of awarding damages such relief would be solely in the Court of Claims. The Second Circuit Court of Appeals in *South Windsor Convalescent Homes, Inc. v. Mathews*, 541 F.2d 910 (1976) held that the claim by the plaintiff rested exclusively in the Court of Claims. The action was brought by a "provider of services" under the Medicare program to secure repayment of monies previously recouped by HEW on a claim of overpayment. That Court held (one judge of the panel dissenting) at p. 914:

"Since the claim involved in this case is directed against the United States, seeks solely a money judgment, and exceeds the threshold sum of $10,000, jurisdiction lies exclusively with the Court of Claims."

Then in *Whitecliff, Inc. v. United States*, 536 F.2d 347 (1976) the Court of Claims held it had jurisdiction of a claim of a Medicare provider for reimbursement by the government for reasonable costs incurred in giving

---

**6.** *Lejeune v. Mathews*, 526 F.2d 950 (5th Cir. 1976); *Ortego v. Weinberger*, 516 F.2d 1005 (5th Cir. 1975); *Moody Nursing Homes, Inc. v.* *United Hospitals Services Association of Atlanta*, (N.D.Ga. March 4, 1976).

services to Medicare beneficiaries. The government's petition for writ of certiorari was denied on April 18, 1977.

It is apparent that this Court lacks jurisdiction to consider the merits of the claim for money damages. Because of that, should the case be transferred to the Court of Claims pursuant to 28 U.S.C., Section 1406(c)?[7]

█ In view of the *Whitecliff* case there is considerable basis for contending that the Court of Claims has jurisdiction of plaintiff's claim. However, the denial of certiorari carries with it no import.[8]

So the denial of certiorari in *Whitecliff* cannot be construed as Supreme Court approval of the decision of the Court of Claims in that case. Thus—insofar as the Supreme Court is concerned—on the jurisdictional issue specifically involved here, there is still a clean slate.

The Court of Claims jurisdiction is found in the Tucker Act, 28 U.S.C. Section 1491.[9] But, as clearly defined in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114:

"The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." 424 U.S. p. 398, 96 S.Ct. p. 953.

The substantive right to bring the claim for damages must—if at all—be found in the Social Security Act itself. *Salfi, supra,*

limits judicial review to that set forth in 42 U.S.C. Section 405(g)—". . . the statute empowers district courts to review a particular type of decision by the Secretary, that type being those which are 'final' and 'made after a hearing'." *Weinberger v. Salfi*, 422 U.S. 749 at p. 764, 95 S.Ct. at 2466.

In *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283 (1976), the Eighth Circuit Court of Appeals stated, p. 289–290:

". . . The considerations which led Congress to limit review under the Social Security Act apply with equal force to the Medicare program.

The Medicare statute is a complicated one. Judicial review of the amount of all Medicare payments would bring the courts into the complex interplay between physician and hospital in ascertaining the appropriate medical charges for technical services—based on facts which vary from community to community. These charges are subject to extensive and complicated statutory guidelines and regulations. *See, e. g.,* 42 U.S.C. Sections 1395ff, 1395p, 1395u; 20 C.F.R. Section 405 *et seq.* Determining the proper amount of these charges is a matter peculiarly suited to determination by a specialized agency.

.     .     .     .     .

To determine whether Congress intended to commit the issues raised by the University to agency discretion we must carefully examine the Medicare Act. The provision governing the availability of ju-

---

7. "The district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case should proceed as if it had been filed in the Court of Claims on the day that it was filed in the district court."

8. In *Maryland v. Baltimore Radio Show,* 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1949), Mr. Justice Frankfurter explained the lack of precedential value, p. 919, 338 U.S.:

"Inasmuch, therefore, as all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, this Court has rigorously insisted that such a denial carries

with it no implication whatever regarding Court's views on the merits of a case which it has declined to review. The Court has said this again and again; again and again the admonition has to be repeated."

9. "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

dicial review in this case appeared in the original Medicare Act. It provided for judicial review on behalf of an individual of

> (a)ny determination (by the Secretary) * * * as to entitlement under Part A or Part B, or as to amount of benefits under Part A * * * (42 U.S.C. Section 1395ff(b) (1970).)

The conspicuous omission of any provision for judicial review of the amount of benefits under Part B indicates that Congress felt that determination of the 'proper reasonable charge' was a matter best left to agency expertise.

> Cf. Schilling v. Rogers, 363 U.S. 666, 674, 80 S.Ct. 1288, 1294, 4 L.Ed.2d 1478, 1484 (1960)."

■ So, as to the case at bar, this Court concludes that the *amount* of recoupment is not subject to judicial review. It follows, then, that the Court of Claims would not have jurisdiction and this case should not be transferred to that Court.

However, there still remains the claim of denial of due process in the method (10% sampling) used by BC–Fla in determining the amount recouped and the use of a committee to make such determination which was composed solely of employees or persons paid by BC–Fla.

As previously noted, this Court has already granted a partial summary judgment on the foregoing issue on what now turns out to be the mistaken belief that this Court had jurisdiction under APA.

■ Despite the removal of the APA from the jurisdictional picture, this Court finds that the Fifth Amendment's requirement of due process gives this Court the jurisdiction to consider the limited issue of the procedure followed in this case. As further noted in the *St. Louis University* case, *supra,* pp. 291–292:

> * * * * * *

> "However, even though we conclude that Congress intended to commit the determination of the proper amount of reimbursement wholly to administrative discretion, we must still face the Univer-

sity's claim under count II that Congress did not and could not approve the administrative process employed in this case. The University points out that HEW subjected it to the bureaucratic whim of a nongovernmental Provider Appeals Committee, a majority of the members of which were officers or employees of BCA whose initial decision was being appealed, and who had an institutional interest in the outcome. According to HEW's view, the Committee's discretion is essentially unrestrained. Judicial review is barred by Section 405(h) and administrative review is precluded by the agreement between HEW and BCA which established the Committee. HEW will not review the Committee's decision even when a provider asserts that the Committee has blatantly ignored governing statutes, regulations, and constitutional requirements.

The Supreme Court has recognized that totally precluding judicial consideration of constitutional issues raises serious constitutional problems. *Weinberger v. Salfi, supra,* 422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537; *Johnson v. Robinson,* 415 U.S. 361, 366 & n. 8, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389, 397 (1974). Those constitutional problems are greatly intensified when an agency purports to subdelegate its immunity from judicial review to a nongovernmental entity. It is a 'cardinal principle' that we are to ascertain whether a construction of the statute involved is 'fairly possible' by which such constitutional doubts may be avoided. *Johnson v. Robinson, supra,* 415 U.S. at 366–67, 94 S.Ct. at 1165–1166, 39 L.Ed.2d at 397–398. We are to proceed in what Justice Stewart termed 'the candid service of avoiding a serious constitutional doubt.' *United States v. Vuitch,* 402 U.S. 62, 97, 91 S.Ct. 1294, 1312, 28 L.Ed.2d 601, 624 (1971) (Stewart, J., dissenting in part).

Thus, we must now return to Section 405(h) to determine if it precludes our jurisdiction to entertain a due process challenge to the procedures adopted by the Secretary to determine Medicare re-

imbursements. Section 405(h) forbids any action under Section 1331 'to recover on any claim arising under this subchapter.' Appellees in *Salfi* argued that this did not bar their constitutional claims since they 'arose under' the Constitution and not under the Social Security Act. The Supreme Court recognized that this argument had substance. 422 U.S. at 760, 95 S.Ct. at 2464, 45 L.Ed.2d at 536. However, it rejected the argument because 'not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions. (Id. at 760–61, 95 S.Ct. at 2464, 45 L.Ed.2d at 536.)'

The Court also indicated that its decision was influenced by the availability of fully adequate judicial review under Section 405(g). The Court said:

> In the present case * * * the Social Security Act itself provides jurisdiction for constitutional challenges to its provisions. Thus the plan words of the third sentence of Section 405(h) do not preclude constitutional challenges. (Id. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537 (emphasis added).)

In the present case, the due process claim has as its primary goal obtaining a constitutionally adequate hearing. Allowing such a hearing will not necessarily affect the University's entitlement to reimbursement or the amount allowed. Secondly, and more importantly, the Medicare Act does not provide the University an adequate alternative means of obtaining judicial review of its due process claim.

We believe that on these two grounds alone, this case is distinguishable from *Salfi,* and thus Section 405(h) does not preclude our jurisdiction of count II. However, there is a third basis for distinction. Section 405(h) is incorporated into the Medicare Act only 'as * * * applicable.' Section 1395ii. The general rule is that a statute incorporated into another 'as applicable' will be read in such a manner as will give form and

effect to the statute into which it is incorporated. *Penrose v. Whitacre,* 62 Nev. 239, 147 P.2d 887, 889 (1944), and authority cited therein. If Section 405(h) were read to wholly preclude adjudication of the University's due process claim it would raise serious constitutional problems which might impair the force and effect of the Medicare Act. Therefore, we find that Congress did not intend for Section 405(h) to apply to the Medicare Act in such a manner as to completely bar judicial consideration of a claim of denial of due process."

Adopting the above-quoted reasoning of the Eighth Circuit, this Court concludes that it had—and has—jurisdiction of the due process claim. That conclusion is consistent with the language in *Mount Sinai, supra,* wherein the Fifth Circuit in footnote 1, on page 333, said:

> "The parties have briefed and argued two substantial issues other than the recoupment question: whether HEW followed properly promulgated regulations in attempting to institute the freeze, and whether in any event the procedures utilized comported with Mount Sinai's Fifth Amendment due process rights. We do not reach these issues, which are for the District Court to rule on in the first instance."

■ This Court has already concluded that the procedure used—making a finding based on 10% of the total cases upon which recoupment was made—denied the plaintiff due process.

That is sufficient to remand this case to the Secretary of HEW for his review which should include an opportunity for plaintiff to be heard. Such hearing and independent review by the Secretary should eliminate any merit to the claim of denial of due process based on the composition of the BC–Fla reviewing committee. Furthermore, even though such committee members may have been employees of or paid by BC–Fla that did not mean they had personal interests adverse to plaintiff. It was the government—not BC–Fla—that was paying

the bills—it was the government—not BC–Fla—that received the recoupment.

By separate order—constituting the final judgment—this case will be remanded to the Secretary of HEW for review of plaintiff's claim in a procedure consistent with this opinion.