Douglas J. COSPITO et al, Plaintiffs,

v.

Joseph A. CALIFANO, Jr., etc. et al, Defendants.

Civ. A. No. 77-869.

United States District Court, D. New Jersey.

Feb. 5, 1981.

Stanley C. Van Ness, Public Advocate by Michael Buncher, Michael L. Perlin, Laura LeWinn, William F. Culleton, Jr., J. Benedict Centifanti, Law Clerk, Trenton, N. J., for plaintiffs.

William W. Robertson, U. S. Atty. by Mary Catherine Cuff, Asst. U. S. Atty., Newark, N. J., for defendant Califano.

McCarter & English by Ronald J. Hedges, Newark, N. J., for defendant Joint Committee on Accreditation of Hospitals.

## MEMORANDUM

CLARKSON S. FISHER, Chief Judge.

This is an action by mental patients at Trenton Psychiatric Hospital (TPH) challenging the Secretary of Health, Education and Welfare's (HEW) termination of plaintiffs' Supplemental Security Income (SSI) benefits received pursuant to 42 U.S.C. § 1382(e)(1)(A) and (B), and the termination of Medicare/Medicaid payments received by TPH on behalf of plaintiffs pursuant to 42

U.S.C. § 1395 *et seq.* and 42 U.S.C. § 1396 *et seq.* Pending are motions by defendants HEW and Joint Commission on Accreditation of Hospitals (JCAH) to limit jurisdiction to 42 U.S.C. § 405(g) and to dismiss the complaint.

## I. Factual and Procedural Background

In 1975, JCAH denied accreditation to TPH. As a result of this de-accreditation, the federal Medicare/Medicaid program at TPH was suspended and plaintiffs' SSI benefits were discontinued. This action by the Secretary was predicated upon the statutory prerequisite that certain institutions, to qualify as "psychiatric hospitals" eligible to receive Medicare/Medicaid funds, be accredited by JCAH. 42 U.S.C. §§ 1395x(f) and 1396d(h)(1). This eligibility, in turn, is the statutory prerequisite for otherwise eligible patients at such institutions to qualify for SSI benefits. 42 U.S.C. § 1382(e)(1)(A) and (B); 20 C.F.R. 416.231.

Upon exhaustion of available administrative remedies, on March 4, 1977, the Secretary determined that plaintiffs were not eligible for SSI benefits under Title XVI of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), plaintiffs filed the complaint in the action now before me for review of this final decision by the Secretary. (Count I) In their complaint plaintiffs further allege independent constitutional grounds to assert federal-court jurisdiction—in particular, plaintiffs allege that (1) due process requires that they have notice and opportunity to be heard prior to a de-accreditation decision, as such action necessarily results in loss of SSI benefits to patients (Counts II and III); (2) the delegation of power in this context to JCAH is an unconstitutional delegation of legislative power. Essentially, plaintiffs challenge the constitutionality, on due process and equal protection grounds, of the statutory scheme whereby eligibility for SSI benefits is predicated upon JCAH accreditation. The alleged jurisdictional bases for these contentions are 42 U.S.C. § 1383(c)(3), 42 U.S.C. § 405(g), 28 U.S.C. § 1361 and 28 U.S.C. § 1331.

## II.  Motion to Limit Jurisdiction

Defendants urge as the ground for their motion that federal-question jurisdiction under 28 U.S.C. § 1331 is precluded by 42 U.S.C. § 405(h), since the final decision of the Secretary of HEW is reviewable as provided in 42 U.S.C. § 405(g).  In pertinent part, this section provides

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.... The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.

42 U.S.C. § 405(g).  Defendants principally rely on *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) to support the position that § 405(h) deprives this court of federal-question jurisdiction.

*Salfi* involved a constitutional challenge to provisions of the Social Security Act which require that the relationship between a wage earner and his wife or stepchildren must have existed for nine months prior to his death as a condition for receiving benefits.  The court reached the merits only with respect to those named individual plaintiffs who had satisfied the requirement of § 405(g) that administrative remedies be exhausted prior to commencement of suit in federal court.  *Id.* at 764, 95 S.Ct. at 2466.

In noting the absence of § 1331 jurisdiction, the court specifically focused on the third sentence of § 405(h) which provides

No action against the United States, the Secretary, or any officer or employee

thereof shall be brought under [§ 1331 *et seq.*] of Title 28 to recover on any claim arising under [Title II of the Social Security Act].

42 U.S.C. § 405(h).  The court held that this sentence barred jurisdiction under § 1331 where a party is seeking Social Security benefits, notwithstanding the constitutional challenge to the statute.  The court stated

It would, of course, be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint.  But it is just as fruitless to argue that this action does not also arise under the Social Security Act.  For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions.  Appellees sought, and the District Court granted, a judgment directing the Secretary to pay Social Security benefits.  To contend that such an action does not arise under the Act whose benefits are sought is to ignore both the language and the substance of the complaint and judgment.  This being so, the third sentence of § 405(h) precludes resort to federal-question jurisdiction for the adjudication of appellees' constitutional contentions.

*Weinberger v. Salfi*, 422 U.S. at 760–61, 95 S.Ct. at 2464–65.  The court also indicated that its decision was influenced by the availability of fully-adequate judicial review under § 405(g).  *Id.* at 762, 95 S.Ct. at 2465.

Despite the absence of jurisdiction under § 1331, § 405(g) was found to authorize judicial review in *Salfi*, at least with respect to the named appellees.  Several circuits have narrowly construed *Salfi*'s language in considering the reach of § 405(h), recognizing that totally precluding judicial consideration of constitutional issues raises serious constitutional problems.  *Shrader v. Harris*, 631 F.2d 297, 300 (4th Cir. 1980); *Hospital San Jorge, Inc. v. U. S. Secretary of H.E.W.*, 598 F.2d 684, 686 (1st Cir. 1979);

United States v. Aquavella, 615 F.2d 12, 21 (2d Cir. 1979); Springdale Convalescent Home, Inc. v. Mathews, 545 F.2d 943, 948–49 (5th Cir. 1977); St. Louis University v. Blue Cross Hosp. Serv., 537 F.2d 283, 291 (8th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976); South Windsor Convalescent Home, Inc. v. Mathews, 541 F.2d 910, 913 (2d Cir. 1976). When Salfi's conclusion is applied to a case where no alternative jurisdictional basis exists,

its restrictive interpretation of § 1331 might lead to a constitutional question of the first order, one that has arisen but rarely and tangentially in our constitutional history, i. e., whether the Congress can close the federal courts entirely to constitutional challenges directed against federal statutes or action. We doubt that the Supreme Court intended its reading of § 405(h) in Salfi to have the effect of precluding federal jurisdiction over constitutional questions, since the result would be at odds with the well established principle that a court will not construe a statute to restrict access to judicial review unless Congress manifests its intent to do so by "clear and convincing evidence." See Salfi, supra, 422 U.S. at 765 [95 S.Ct. at 2466]; Johnson v. Robison, 415 U.S. 361, 373–74 [94 S.Ct. 1160, 1168–69, 39 L.Ed.2d 389] (1974); Abbott Laboratories v. Gardner, 387 U.S. 136, 141 [87 S.Ct. 1507, 1511, 18 L.Ed.2d 681] (1967); Rusk v. Cort, 369 U.S. 367, 379–80 [82 S.Ct. 787, 794–95, 7 L.Ed.2d 809] (1962). Perhaps for this reason, at least two other circuits have narrowly construed Salfi's language in considering the reach of § 405(h). See Lejeune v. Mathews, 526 F.2d 950, 953 (5th Cir. 1976); Sanders v. Weinberger, 522 F.2d 1167, 1171 (7th Cir. 1975).

South Windsor Convalescent Home, Inc. v. Mathews, 541 F.2d at 913–14 (footnotes omitted). Mid Atlantic Nephrology Center Ltd. v. Califano, 433 F.Supp. 23, 32 (D.Md. 1977). Further,

[t]he Supreme Court has recognized that totally precluding judicial consideration of constitutional issues raises serious constitutional problems. Weinberger v.

Salfi, supra, 422 U.S. at 762 [95 S.Ct. at 2465]; Johnson v. Robison, 415 U.S. 361, 366 & n.8 [94 S.Ct. at 1160, 1165 & n.8] (1974). Those constitutional problems are greatly intensified when an agency purports to subdelegate its immunity from judicial review to a nongovernmental entity.

St. Louis University v. Blue Cross Hosp. Serv., 537 F.2d at 291; Daytona Beach General Hosp., Inc. v. Weinberger, 435 F.Supp. 891, 891 (M.D.Fla.1977).

In this case, plaintiffs challenge the constitutionality of the scheme whereby defendant JCAH's standards and decisions are used to determine provider and individual eligibility to receive benefits pursuant to Medicare, Medicaid and SSI programs. Plaintiffs challenge on due process grounds the procedures adopted by the Secretary to determine the provider status of TPH—plaintiffs argue that they are entitled to prior notice and prior opportunity to be heard regarding the termination of their residence as a provider of Medicare and Medicaid services.

Plaintiffs raised these claims before the Administrative Law Judge at a hearing to challenge the termination of their SSI benefits. The ALJ was unwilling to resolve most of the constitutional questions raised by plaintiffs throughout the administrative hearing procedure and, therefore, access to this court is essential so as to provide a forum for the resolution of these issues. Accord Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). The following excerpts, evidencing the ALJ's failure to confront constitutional issues, support the exercise of federal-question jurisdiction in this case:

Claimants' maintain, however, that as disabled individuals in a medical institution they are members of a class which the legislation was intended to benefit and that to exclude them because of the institution's loss of Title XIX provider status constitutes arbitrary classification repugnant to Constitutional guarantees.... Claimants argue that they are

powerless to influence provider status of the institution, have themselves undergone no change in condition upon which eligibility in the instant case is premised, and are no different than their "disabled" counterparts in similar institutions, who, because the institution retains Title XIX provider status, continue to be eligible for Title XVI benefits.

With regard to the above contentions, there can be no argument that claimants' eligibility does depend on Title XIX provider status of the hospital and consequently on that institution's JCAH accreditation upon which such provider status hinges. Further, claimants have no statutory right to be heard on Title XVIII or Title XIX issues. Whether the exception to the general rule provided in Section 1611(e)(1)(B), tying eligibility of certain "disabled" claimants to Title XIX provider status of the hospital creates an "arbitrary classification" repugnant to Constitutional guarantees is a question which cannot be decided in this forum. . . . Whether or not such eligibility classification, dependent as it is on factors beyond the claimants' condition or control, fails to serve a legitimate government interest or unreasonably discriminates among a class are issues for decision which are beyond the jurisdiction of the presiding officer. . . .

Claimants contention that they are entitled as a matter of Constitutional right to a pretermination hearing on all issues logically relevant to termination of their Title XVI benefits on the basis of the rationale in *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] deserves some scrutiny. It is established that property interests protected by due process include those that a person has acquired in specific benefits (*Board of Regents v. Roth*, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548]), and that one receiving welfare benefits must have the issue of his continuing eligibility resolved by a pretermination hearing (*Goldberg v. Kelly, supra*). . . .

It is the opinion of the Administrative Law Judge for the reasons outlined above that claimants have not established the existence of a viable due process issue with regard to the time hearing is accorded upon cessation of Title XVI benefits. Further, it is the opinion of the Administrative Law Judge, that the rationale supporting the decision in *Goldberg v. Kelly, supra*, does not similarly apply to the facts and circumstances of the instant case.

The Attorney General of the State of New Jersey, legal representative of Dr. Martin Weinberger, as representative payee for a majority of the claimants herein, and of the Trenton Psychiatric Hospital, who were joined as parties, contends that the ineligibility of claimants resulted from Trenton Psychiatric Hospital's loss of JCAH accreditation and consequent loss of Title XIX provider status, and that such delegation of power to a private body (JCAH) without adequate regulation and control by the Department of Health, Education and Welfare (See Exhibit 6) is a Constitutionally prohibited delegation of legislative power. Several other issues and arguments under the Fifth and Fourteenth Amendments to the Federal Constitution are also raised by the Attorney General on behalf of claimants. (Exhibit 7) Constitutional issues, however, cannot be resolved in this forum, and in the opinion of the Administrative Law Judge, comment beyond that already made with regard to distinguishing the facts of the instant case, from those in *Goldberg v. Kelly, supra*, would be neither useful nor warranted.

In the case of *Cospito, et al*, Dec. H.E.W., at 7–10 (9/29/76).

Unlike the plaintiffs in *Salfi*, who had available to them fully adequate judicial review of their constitutional claims under § 405(g), plaintiffs here present colorable constitutional claims and the statute provides no available administrative process leading to judicial review of activities of HEW and JCAH which allegedly have caused them injury. To deny federal-question jurisdiction over these constitutional challenges and preclude judicial considera-

tion of these issues, asserting § 405(g) and (h) as a jurisdictional bar, would in itself provoke serious constitutional problems. *Weinberger v. Salfi*, 422 U.S. at 762, 95 S.Ct. at 2465; *Johnson v. Robison*, 415 U.S. at 366 & n.8, 94 S.Ct. at 1165 & n.8. These problems are intensified because of JCAH's involvement in the decision to de-accredit TPH, as HEW would be able to subdelegate its immunity from judicial review to a nongovernmental entity. *St. Louis University v. Blue Cross Hosp. Serv.*, 537 F.2d at 291; *Daytona Beach General Hospital, Inc. v. Weinberger*, 435 F.Supp. at 899.

This case is also distinguishable from *Salfi* because plaintiffs' due process claims have as their primary goal obtaining a constitutionally adequate hearing. Allowing such a hearing will not necessarily affect TPH's entitlement to the amount allowed. Because plaintiffs are challenging the manner in which they were deprived of benefits, seeking to assure that procedures comporting with due process be followed by the Secretary in determining TPH's continued participation in the Medicare/Medicaid programs, I find federal-question jurisdiction to entertain this complaint. *St. Louis University v. Blue Cross Hosp. Serv.*, 537 F.2d at 292; *Schwartzberg v. Califano*, 453 F.Supp. 1042, 1045 (S.D.N.Y.1978). *See also Klein v. Mathews*, 430 F.Supp. 1005, 1006 (D.N.J.1977) (jurisdiction exists under § 1331(a) and § 1361 to entertain patients' claim that due process entitled them to notice and a hearing before HEW can terminate federal financial participation for a de-accredited Medicaid facility).

### III. Motion to Dismiss

A motion to dismiss an action under Fed.R.Civ.P. 12(b)(1) raises the question of the federal court's subject-matter jurisdiction over the action. The defense of lack of subject-matter jurisdiction may be asserted

> at any time by any interested party, either in the answer, or in the form of a suggestion to the court prior to final judgment. After final judgment it may be interposed as a motion for relief from

the judgment under Rule 60(b)(4). Lack of subject-matter jurisdiction may also be asserted at any time by the court, *sua sponte*, either at the trial or appellate level.

C. Wright & A. Miller, 5 Federal Practice & Procedure § 1350 at 544–45 (1969) (footnotes omitted). A complaint must be dismissed for lack of subject-matter jurisdiction if the action does not " 'arise under' the Federal Constitution, laws or treaties (or fall within one of the other enumerated categories of Art. III, § 2), or is not a 'case or controversy' within the meaning of that section; or the cause is not one described by any jurisdictional statute." *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 699, 7 L.Ed.2d 663 (1961). Only if the claim is so "attenuated and unsubstantial as to be absolutely devoid of merit," *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904), or "frivolous," *Bell v. Hood*, 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), is dismissal of the complaint on the ground of lack of subject-matter jurisdiction warranted. The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction to show that he has alleged a claim under federal law and that the claim is not frivolous. C. Wright & A. Miller, *supra*, at 555–56. It is no longer necessary for the pleader to establish that the matter in controversy exceeds the sum or value of $10,-000 for me to assume § 1331 jurisdiction over any civil action pending on or filed subsequent to December 1, 1980. Federal Question Jurisdictional Amendments Act of 1980, Pub.L.No.96–486, 94 Stat. 2369 ·(12/1/80).

I cannot agree with defendants' contentions that the recent decision in *O'Bannon v. Town Court*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) is dispositive of plaintiffs' due-process claims and requires that such claims be dismissed. At issue in *Town Court* was whether the patients residing at a nursing home had an interest in receiving Medicare or Medicaid benefits for care in that facility that entitles them, as a matter of constitutional law, to a hearing before the government can decertify that facility.

The court held that the government's enforcement of their regulations, which condition Medicare and Medicaid eligibility on the certification of a facility without providing patients a hearing prior to de-accreditation of the institution, did not directly affect the legal rights of the patients nor deprive them of any constitutionally protected interest in life, liberty or property. While recognizing that decertification of a facility may have "an immediate, adverse impact on some residents," 447 U.S. at 787, 100 S.Ct. at 2476, in the court's view, decertification did not reduce or terminate the patients' financial assistance but "merely require[d] him to use it for care at a different facility." *Id.* Since the Medicaid provisions do not confer a right to continued residence in the home of one's choice, but rather give recipients "the right to choose among a range of *qualified* providers, without government interference," no due-process rights are triggered because the patients are free to transfer to a qualified facility. While the Medicaid regulations "do protect patients by limiting the circumstances under which a *home* may transfer or discharge a Medicaid recipient, they do not purport to limit the Government's right to make a transfer necessary by decertifying a facility." *Id.* (footnote omitted). Thus, any transfer which may result is an "indirect and incidental result of the Government's enforcement action," *id.*, and does not amount to a deprivation of life, liberty, or property as the patients are free to choose from any one of a range of qualified providers.

While on first impression *Town Court* seems on all fours with the case at bar, *Town Court* must be distinguished on its facts. Unlike the plaintiffs in *Town Court*, plaintiffs here are institutionalized through the specific application of state process. The court's analysis in *Town Court* hinged upon the freedom of the patients to voluntarily transfer to a qualified provider. The involuntarily committed patients at TPH cannot simply leave the hospital upon de-accreditation of the institution. They have been committed pursuant to state statute and court rule and may only be discharged in certain ways specified by statute. N.J. S.A. 30:4–23 to 46; N.J.Ct.R. 4:74–7. Even voluntary patients may be retained in the hospital against their will for observation periods and such persons are subject to formal, involuntary commitment procedures. N.J.S.A. 30:4–46 to 48. Further, the plaintiffs in *Town Court* were given the statutory right to choose among a range of qualified providers without government interference. 42 U.S.C.A. § 1396a(a)(23). Plaintiffs, both voluntary and involuntary, are not free to choose among state mental hospitals—the government delineates the geographical boundaries which mechanically dictate the placement of the individual patient.

Unlike the plaintiffs in *Town Court*, mental patients have constitutional rights to liberty and property which are triggered throughout all phases of the commitment process, including the right to care at a particular facility. *Parham v. J. R.*, 442 U.S. 584, 600, 99 S.Ct. 2493, 2503, 61 L.Ed.2d 101 (1979) (children and adults have substantial liberty interests in not being confined unnecessarily for medical treatment— state's involvement in the commitment decision constitutes state action under the Fourteenth Amendment); *O'Connor v. Donaldson*, 422 U.S. 563, 576, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975) (involuntary custodial confinement of nondangerous individual violates constitutional right to liberty); *Wyatt v. Aderholt*, 503 F.2d 1305, 1312 (5th Cir. 1974) (civilly committed mental patients have constitutional rights to such care and treatment as will help each of them to be cured or to improve his or her mental condition). Plaintiffs here do not have the freedom to move to a qualified facility, rather they are forced to remain in an allegedly substandard facility through no fault of their own and have been deprived of governmental benefits which they would be entitled to but for the decertification of the hospital. Based upon the critical differences between the facts of *Town Court* and the case at bar, I cannot find that plaintiffs' claims are so attenuated, unsubstantial and frivolous as to be abso-

lutely devoid of merit, and therefore, dismissal of plaintiffs' due process claims on the ground of subject-matter jurisdiction is unwarranted.

■ Similarly, I am not inclined to dismiss defendant JCAH as a party to this litigation at this stage of the proceedings. It is a well-established principle that private action, as distinguished from federal action, is immune from the due-process restrictions of the Fifth Amendment. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Public Utilities Commission v. Pollack*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). The court has formulated several tests to determine whether private action is state action, which tests are fully applicable to determine whether JCAH's activities are federal action. JCAH's participation in the statutory scheme whereby institutions are determined to be eligible for Medicare or Medicaid benefits must be held to be "federal action" before it can be held liable for any of the alleged deprivations here.

One of the fundamental principles in this area was stated by the court in *Evans v. Newton*, 382 U.S. at 299, 86 S.Ct. at 488: "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." In *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 351, 95 S.Ct. at 453, the court held that in order to find state action the inquiry must be made as to whether there is a sufficiently close "nexus" between the state and the challenged action of the regulated entity so that the action of the latter becomes state action. Another model of state-action analysis is the "symbiotic relationship" approach, which looks to the "extent and nature of the overall relationship between the state agency and the private enterprise." *Braden v. University of Pittsburgh*, 552 F.2d 948, 957 (3d Cir.

1977) (*en banc*); *Chalfant v. Wilmington Institute*, 574 F.2d 739, 745 (3d Cir. 1978) (*en banc*).

State action issues require a case-by-case approach as each case turns on its own facts. The Third Circuit has made it clear that courts should refrain from dismissing actions on the finding of no state action until the facts and circumstances surrounding the challenged activity are fully determined. In *Braden v. University of Pittsburgh, supra*, the trial court dismissed plaintiff's complaint for lack of state action. In vacating this order of dismissal, the Third Circuit held:

It would perhaps be possible for us to decide this last issue on the present record but we think we should not do so. Very important constitutional questions are presented and the Supreme Court has repeatedly informed us that such difficult issues should not be decided except upon a full record and after adequate hearing. *Polk Co. v. Glover*, 305 U.S. 5 [59 S.Ct. 15, 83 L.Ed. 6] (1938); *Bordens Farm Products v. Baldwin*, 293 U.S. 194 [55 S.Ct. 187, 79 L.Ed. 281], *concurring opinion*, 293 U.S. 213 [55 S.Ct. 239, 79 L.Ed. 281] (1934); *Villa v. Van Schaick*, 299 U.S. 152 [57 S.Ct. 128, 81 L.Ed. 91] (1936). See also *Honeyman v. Hanan*, 300 U.S. 14, 25 [57 S.Ct. 350, 355, 81 L.Ed. 476] (1937); *Patterson v. Alabama*, 294 U.S. 600, 607 [55 S.Ct. 575, 578, 79 L.Ed. 1082] (1935); *Rescue Army v. Municipal Court*, 331 U.S. 549 [67 S.Ct. 1409, 91 L.Ed. 1666] (1947); *DeBacker v. Brainard*, 396 U.S. 28 [90 S.Ct. 163, 24 L.Ed.2d 148] (1969), and *Cowgill v. California*, 396 U.S. 371 [90 S.Ct. 613, 24 L.Ed.2d 590] (1970).

*Braden v. University of Pittsburgh*, 477 F.2d 1, 4–5 (3d Cir. 1973). *See also Holton v. Crozer-Chester Medical Center*, 560 F.2d 575, 578 (3d Cir. 1977) (court's "first concern" was that complaint was dismissed when discovery on state action may not have been completed); *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 351, 95 S.Ct. at 453 (detailed inquiry required in order to determine whether state action test is met).

At oral argument, plaintiffs' counsel requested additional opportunity for further discovery against JCAH and the federal government in order "to show the court the relationship between the two." Transcript of Motion at 27 (12/16/80). Plaintiffs' brief is replete with many relevant yet unanswered questions concerning the existence of state action. Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Dismiss and to Limit Jurisdiction at 14–15 (12/5/80). Until the facts and circumstances indicating the existence or nonexistence of state action can be fully determined, I feel compelled to deny JCAH's pending motion.

A decision as to whether or not *Leone v. Mathews*, Civil No. 76–1059 (D.N.J. Aug. 2, 1977) bars plaintiffs' claims of unconstitutional delegation of power to JCAH would be inappropriate at this time. The *Leone* court's decision to uphold the constitutionality of 42 U.S.C.A. § 1395x(f) focused on the existence of an HEW distinct part survey mechanism for adult psychiatric facilities. The court in *Leone* held that the plaintiffs' constitutional challenge to 42 U.S.C.A. § 1396d(h)(1)(A) was moot:

> The plaintiffs point out that the Medicaid statute and regulations do not provide for distinct part certification of hospitals with respect to inpatient services for individuals under age twenty-one (21). JCAH accreditation is apparently essential to eligibility for Medicaid reimbursement for this age group. Although this presents a serious constitutional question, it does not appear that these plaintiffs have the requisite standing to raise the issue at this time. In March, 1977, the children's unit of TPH was re-accredited by JCAH· and thus became entitled to receive Medicaid funds. Consequently, the plaintiffs' challenge to 42 U.S.C. § 1396d(h)(1)(A) will be dismissed as moot. *See DeFunis v. Odegaard*, 416 U.S. 312 [94 S.Ct. 1704, 40 L.Ed.2d 164] (1974); Note, *The Mootness Doctrine in the Supreme Court*, 88 Harv.L.Rev. 373 (1974).

*Leone v. Mathews* at 7. Plaintiffs contend that this issue is not moot because there are

individuals who are under age 21 who are not residing in the children's unit, who have been denied their SSI benefits under 42 U.S.C.A. § 1396d(h)(1)(A). Resolution of these legal and factual disputes must await further development of the record.

Defendants' motions to limit jurisdiction to § 405(g) and for dismissal are hereby denied. Plaintiffs are granted ninety days for discovery, limited to the state-action issue. An order accompanies this memorandum.